[L. A. No. 1623. In Bank.—February 16, 1907.]

W. F. BAIRD, Administrator, etc., Appellant, v. J. D. MONROE et al., Defendants; GEORGE HARLAN, Respondent.

LOS ANGELES CHARTER—OPENING OF STREET UNDER GENERAL LAW— VOID PROCEEDINGS AND DEED.—Proceedings to open and widen a street in the city of Los Angeles under the general law of March 6, 1889, instead of under the city charter, are void, and a deed thereunder executed by the superintendent of streets is a nullity.

TAXATION—DEED TO STATE—PERIOD OF REDEMPTION NOT RECITED—IN-
VALIDITY—CURATIVE ACT.—Under the law as it stood prior to the
curative act of 1903 a deed to the state for delinquent taxes not
containing a recital of the time allowed for redemption was void;
but that curative act had the effect to legalize deeds theretofore
made not containing such recital, provided five years have elapsed
since the date of the sale and deed.

ID.—CONSTRUCTION OF CURATIVE ACT—RETROACTIVE EFFECT.—The rule
that a statute should not be construed to operate retroactively unless
the legislative intention that it should so operate is clearly apparent
cannot apply where it is essentially a curative act, intended to give
effect to past transactions which are ineffective because of neglect
to comply with some requirement of law.

ID.—CONSTITUTIONALITY OF ACT.—The curative act of February 28, 1903,
is not a ''local or special law'' within the prohibition of subdivisions
14 or 18 of section 25 of article IV of the constitution, being a
general law, applicable to all certificates and deeds having the defects
stated.   Nor does it operate to deprive the property-owner of his
property ''without due process of law,'' since it is his failure to
redeem within the time fixed by law, after ''due process of law''
to enforce delinquent taxes, that deprives him of his property, the
defect cured being in a merely formal matter, not affecting the sub-
stantial rights of the taxpayer.

ID.—CERTAINTY AS TO AMOUNT OF SALE.—A recital as to the amount
for which the property was sold which shows the total amount due
for taxes, penalties, costs, and charges at the time of the sale, is
sufficiently certain.

ID.—DESCRIPTION OF PROPERTY ASSESSED—USE OF ABBREVIATIONS—
REFERENCE TO TRACT NAMED—PRESUMPTION—KNOWN EXTENT OF
BOUNDARIES.—The description of property assessed as being ''in Los
Angeles County,'' in ''Pellissier Tr.,'' and as ''Lot 5'' in ''Block
K,'' sufficiently shows that the property assessed is Lot 5 in Block
K in the Pellissier Tract in Los Angeles County.   The use of abbre-
viations is permissible if thereby the property may be easily known;
and the court might presume in the absence of proof to the con-
trary that there was but one such tract in the county, and that the
tract and the extent of its boundaries are well known by that name.

ID.—STIPULATION AS TO RECORDED MAP—PROPERTY SUFFICIENTLY IDEN-
TIFIED.—Where there was a stipulation as to a recorded map of the
''Pellissier Tract'' designating with certainty the property referred
to in the assessment, it is to be taken as meaning that there is but
one such map, and the property is sufficiently identified by means
thereof.   It was permissible to show, in aid of the description,
that it was in fact sufficient to identify the land, and to show the
recorded map of that tract for that purpose.

ID.—DESCRIPTION OF CITY LOTS—ALTERNATIVE DESCRIPTION.—It is not
essential to the validity of an assessment of a city lot that the
description of the lot complies with the requirements of subdivision

CL Cal.—36

3 of section 3650 of the Political Code. The assessor is authorized to assess the same under. subdivision 2, if he so desires, using any description which is sufficient to identify the property assessed.

ID.—DESIGNATION OF SCHOOL AND ROAD DISTRICT.—Where the name of the school and road district were the same and were known by the name of "Rosedale," it was sufficient to place the name partly in one column and partly in the other, thus: "Ros | edale."

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

O. B. Carter, for Appellant.

W. W. Allen, Sr., Lucius M. Fall, and E. R. Fox, as *Amicus Curiæ,* for Respondent.

ANGELLOTTI, J.—This is an action to quiet title to certain real property, described in the complaint as lot five in block "K" of the Pellissier tract in the city and county of Los Angeles, state of California, as per map recorded in book 15, page 70, miscellaneous records of said county. Defendant Harlan had judgment, and plaintiff appeals from such judgment and from an order denying his motion for a new trial.

Plaintiff's testator was the owner of the land involved at the time of his death, January 7, 1899, and his estate is still the owner thereof unless title has been divested by either of two deeds. The first of these is a tax-deed from the tax-collector of Los Angeles County to the state of California of date July 6, 1900, for state and county taxes for the year 1894, followed by a deed from the tax-collector, dated July 20, 1901, purporting to have been made upon the authorization of the state controller, to one Monroe, whose title is vested in defendant Harlan. The second deed is a deed dated July 24, 1903, from the street superintendent of the city of Los Angeles to defendant Harlan, based on an assessment for the opening and widening of Pico Street in said city.

It appears that the street superintendent's deed was made in proceedings for the opening and widening of Pico Street, under and in accord with the general law of March 6, 1889, (Stats. 1889, p. 70,) instead of under and in accord with the

provisions of the charter of the city of Los Angeles applicable to such matter. Such proceedings were therefore void (*Byrne v. Drain,* 127 Cal. 663, [60 Pac. 433]), and the street superintendent's deed a nullity. This does not appear to be contested by defendant.

The question then is as to the validity of the tax-deed.

1. The sale to the state was made July 3, 1895, under the provisions of section 3771 of the Political Code, as amended March 28, 1895, (Stats. 1895, p. 327,) requiring the sale to the state by the tax-collector of all property delinquent for taxes. The deed to the state was made July 6, 1900, under section 3785 of the Political Code, as amended March 28, 1895, (Stats. 1895, p. 328). That section provided: "If the property is not redeemed within the time allowed by law for its redemption, the tax-collector, or his successor in office, must make the state a deed of the property, reciting in such deed the name of the person assessed (when known), the date of sale, a description of the land sold, the amount for which it was sold, that it was sold for delinquent taxes, giving the assessed value and the year of assessment, the time when the right of redemption had expired, and that no person has redeemed the property in the time allowed by law for its redemption." Section 3780 of the Political Code provided that a redemption might be made "within five years from the date of the sale to the state, or at any time prior to the entry or sale of said land by the state." The tax-collector's deed to the state did not recite in terms "the time when the right of redemption had expired," but did recite "the date of sale," and further: "And whereas no person has redeemed the property aforesaid within the time allowed by law for its redemption; . . . and whereas, the time for redeeming said property has expired, and the same has not been redeemed, nor any part thereof." The recital as to what the certificate of sale stated as to when the purchaser would be entitled to a deed, we regard as immaterial in this connection. As we have seen, section 3785 of the Political Code requires in the deed not only a recital of "the date of sale," and a recital that "no person has redeemed the property in the time allowed by law," but also a recital of "the time when the right of redemption had expired," and the first two recitals thus required cannot be taken as also answering the requirement as to the additional recital

expressly provided for. The statute undoubtedly requires
a plain statement in terms as to the time when the right of
redemption had expired, and a deed that did not contain it
was not in compliance with the statute.

There can be no doubt that it was the well-settled doctrine
in this state prior to the amendment of our tax-laws providing
that all property delinquent for taxes shall be declared sold
to the state for the taxes and penalties due, instead of to the
best bidder at public auction, that a tax-deed not containing
any recital required by law was void. (See *Grimm* v. *O'Con-
nell,* 54 Cal. 522; *Hubbell* v. *Campbell,* 56 Cal. 527; *Ander-
son* v. *Hancock,* 64 Cal. 455, [2 Pac. 31]; *Hughes* v. *Cannedy,*
92 Cal. 382, [28 Pac. 573]; *Simmons* v. *McCarthy,* 118 Cal.
622, [50 Pac. 761].) The decisions proceed upon the theory
that it is competent for the legislature to prescribe the form
of instrument which, as the result of a proceeding *in invitum,*
can alone divest the citizen of his title, and that where the
particular form of the tax-deed has been prescribed by statute
the form becomes substance, and must be strictly pursued, and
it is not for the courts to inquire whether the required recitals
are of material facts or otherwise. (*Grimm* v. *O'Connell,* 54
Cal. 522; *Simmons* v. *McCarthy,* 118 Cal. 622, [50 Pac. 761].)
This may appear to be an extremely technical ruling when
applied in the case of such a recital as that here involved.
We are unable to see how a recital in the deed to the state
as to the date when the right of redemption had expired could
be of any substantial benefit to the property-owner, especially
where there is a recital as to the date of sale, which, when
considered in connection with the law as to the time after a
sale when the state will be entitled to a deed, is sufficient to en-
able any one to determine exactly when the time had expired.
The legislature has seen fit, however, to require that the time
shall be expressly stated in the deed, and that nothing in that
regard shall be left to be determined from one's knowledge
of the law. If the decisions already cited as to the effect of a
failure to include in the tax-deed all the recitals required by
statute, however immaterial an omitted recital may appear to
us, are to be followed, it must be held that the tax-deed in
question was originally void.

By act approved February 28, 1903, taking effect immedi-
ately, entitled "An act to confirm, validate, and legalize cer-

tificates of tax-sales and tax-deeds executed to the state of California for property sold and deeded thereto for non-payment of taxes'' (Stats. 1903, p. 63), it was provided as follows: ''That all certificates of tax-sales and tax-deeds made to this state by the county tax-collector, which certificates and deeds are based upon the sale of property for non-payment of taxes, and which certificates and deeds fail to recite the correct date, or any date, when the right of redemption will expire, or had expired, or which certificates recite an incorrect date when the state would be entitled to a deed, be and they are hereby confirmed, validated, and legalized, and the same shall be construed and operate at all times and upon all occasions in law in the same manner as if such matters and things required by law had been recited therein and performed in the first instance; provided, that in all cases five years shall have elapsed between the date of sale of the property to the state for non-payment of taxes and the date of the execution of such deed.'' It is claimed by defendant that the defect in the deed was cured by this act, and we are of the opinion that it should be so held.

We are fully aware of the rule that a statute should not be construed to operate retroactively, unless the legislative intention that it shall so operate is clearly apparent. (*San Francisco Sav. Union* v. *Reclamation District,* 144 Cal. 639, 647, [76 Pac. 374], and cases there cited. See, also, *State* v. *Harman,* 57 W. Va. 447, [50 S. E. 828].) It is impossible to read carefully the statute in question, however, without coming to the conclusion that it was intended to so operate. It is essentially a curative act, intended to give effect to past acts or transactions which are ineffective because of neglect to comply with some requirement of law. No other object for its enactment can reasonably be suggested. If it had been simply intended to dispense with the necessity in future cases of the requirement that the certificate and deed should correctly recite the date when the right of redemption would expire or had expired, the obvious and simple method would have been to amend in those particulars the statute with reference to certificates and deeds, or to simply provide that the omission to correctly recite such date would not invalidate the certificate or deed. Retaining those provisions in their original form, the legislature, however, enacted this statute, which in every line

compels the conclusion that it was the intention to cure, "to confirm, validate, and legalize," something already ineffectively done. The words used are capable of no other reasonable construction, however strictly we construe them.

The statute by its terms covers the case before us. At the date of the approval of the act, the deed had been executed to the state, and the defect therein was that it failed to recite any date when the right of redemption had expired. The only question remaining in this connection is as to the power of the legislature to cure such a defect in the manner here attempted. The act of February 28, 1903, is not a "local or special" law within the meaning of those words as used in section 25 of article IV of our constitution, and is therefore not within the 14th or 18th subdivisions of that section, whereby the legislature is prohibited from passing local or special laws giving effect to invalid deeds, wills, or other instruments, or legalizing, except as against the state, the unauthorized or invalid act of any officer. It applies to all certificates and deeds having the defects stated, and the certificates and deeds constituted a class characterized by such qualities as indicated the propriety of such legislation. (*Deyoe* v. *Superior Court*, 140 Cal. 476, 481, [98 Am. St. Rep. 73, 74 Pac. 28].) The only remaining objection to the act is that it operates to deprive the property-owner of his property without due process of law. This objection, we are satisfied, is not well founded. Assuming in the discussion of this question, as we must, that the assessment upon which the deed was founded was valid, and that all the requirements of the law relative to the enforcement of the taxes thereunder up to the time of the execution of the deed had been fully complied with, the omission of the tax-collector to insert in the deed the recital in question, though sufficient perhaps under our decisions to render the deed ineffectual as it then stood, was really more in the nature of a mere irregularity, not affecting any substantial right of the property-owner. Under the law requiring that all property delinquent "shall by operation of law and the declaration of the tax-collector be sold to the state" (Pol. Code, sec. 3771), the property, more than five years before the deed, had been sold to the state for the taxes, penalties, and costs due thereon. At the time of the execution of the deed, the five years from the date of sale within which the

owner had the absolute right of redemption having expired
(Pol. Code, sec. 3780), the state was entitled to the deed from
the tax-collector, and it was then the duty of the tax-collector
to execute such deed in the manner prescribed by law. The
state was then equitably the owner of the property. The
property-owner had, as against the state, forfeited all rights
in the property, except the privilege accorded him by the
statute of redeeming it at any time before the state actually
entered or disposed of it. The deed to the state provided for
by the statute, though designated a "deed," is nothing more
in effect than formal written evidence of the various facts
essential to vest the property in the state, and to which the
legislature has seen fit to give a certain effect. (Pol. Code,
sec. 3787.)   It is the evidence, primary in some particulars
and conclusive in others, of those facts from which the vesting
of the title to the property in the state necessarily follows
as a matter of law, and *prima facie* operates as a muniment
of title.   (Pol. Code, secs. 3786, 3787.)   We cannot see how
any right of the property-owner is violated by a statute vali-
dating such of these instruments as are ineffectual solely
because they fail to contain a recital as to the date when the
absolute right of redemption had expired and the state had
become entitled to a deed. The fact that the five years' period
had expired without redemption was the important thing, so
far as he was concerned, and the curative statute probably
could not, and certainly did not, purport to apply to any case
where such period had not elapsed between the date of sale
and the date of the execution of the deed. It is his failure
to redeem within the time specified that deprives him of his
property, after due process of law, and he has no constitu-
tional right to any particular form of instrument by which
his failure to redeem and the consequent final vesting of the
property in the state shall be evidenced. The defect attempted
to be cured by the act is as to a mere formal matter,—one that
in no degree affected any of the substantial rights of the tax-
payer.   It was therefore entirely within the power of the
state to remedy the defect by curative statute. It appears
to be thoroughly well settled that in matters pertaining to
the collection of taxes it is within the power of the legislature
to cure, by retroactive statutes, defects which are in their
nature irregularities only, which do not extend to matters

of jurisdiction, and that such statutes are not within the constitutional inhibition against the taking of property without due process of law. We consider it unnecessary in this connection to do more than refer to the opinion of this court in the recent case of *Chase* v. *Trout,* 146 Cal. 350, [80 Pac. 81], where the matter is exhaustively discussed, and many authorities cited. That case, it is true, involved simply a conclusive-evidence provision in an act operating prospectively only, but the doctrine therein declared is equally applicable to mere validating acts, and many of the cases cited involved questions as to the validity of such acts. The case of *Harper* v. *Rowe,* 53 Cal. 233, relied on by plaintiff, is not in conflict with the views expressed in *Chase* v. *Trout,* 146 Cal. 350, [80 Pac. 81]. There the levy of the tax was invalid for want of any law authorizing it to be levied, and the curative act, enacted after a purported sale for delinquent taxes thereon, attempted to validate the levy and all proceedings had thereon, including the sale for delinquent taxes. This was clearly a matter going to the jurisdiction. Without a valid tax·levy there could be no valid proceedings for the enforcement of the tax, and it was very properly held in *Harper* v. *Rowe,* 53 Cal. 233, that a statute purporting to validate such a levy, and the sales already made thereunder, operated to deprive property-owners of their property without due process of law, and by mere legislative rescript.

2. It is further claimed that the deed was invalid for failure to recite "the amount for which it [the land] was sold" to the state. The objection in this behalf is most technical and wholly without merit. The recital is "was, by operation of law and the declaration of said tax-collector, sold to the state of California, as purchaser, in pursuance ·of law in such cases made and provided, to pay said taxes· of every kind charged against said property, together with the penalties, costs, and charges due thereon, to wit: the sum of two and 92-100 dollars." Plaintiff contends that this recital does not show the amount for which the property was sold to the state, but shows only the object of the sale, and the total amount due for taxes, penalties, costs, and charges. As, under the law, there could be a sale to the state only for the precise amount so due, it appears very clear that what the legislature intended as to this particular recital was simply

that there should be a statement as to the exact amount so due to the state at the time of sale. In *Simmons* v. *McCarthy,* 118 Cal. 622, [50 Pac. 761], relied on by plaintiff, the recitals left it in doubt as to the exact amount paid by a purchaser at a tax-sale. There is no such uncertainty in the deed here involved.

 · 3. The assessment is assailed upon several grounds. The assessment was introduced in evidence. The description of property therein was as follows: "In Los Angeles County, in Pellissier Tr.," and in the column headed "City and Town Lots," under the subheading "Lot," the figure "5," and under the sub-heading "Block" the letter "K." No city or town was named, and it does not appear whether or not at the time of the assessment the property was included in any city or town. It was stipulated that a map of the Pellissier tract was recorded in the year 1887 in the recorder's office of Los Angeles County, and that it showed said lot 5 in block K to be fifty-four feet front by one hundred and twenty-one feet deep. The valuation of the property was placed in the column headed "Value of City and Town Lots." In the assessment the word "Rosedale" was written across the line dividing the column headed "School District" from the column headed "Road · District," thus:—

| School District | Road District |
| Ros | edale |

The principal contention against this assessment is that the description of property is insufficient. It is apparent from the face of the assessment that the property assessed is lot 5 in block K in the Pellissier tract in Los Angeles County. Although we are not prepared to commend the abbreviation of the word "tract" to "Tr.," we think that such abbreviation used in the connection in which it here appears could not be reasonably supposed to indicate, as suggested by plaintiff, either "trustee," "transcript," or "treasurer," or anything else than the word "tract." The use of abbreviations in assessments appears to be permissible, if thereby the property "may easily be known." (*Rollins* v. *Woodman,* 117 Cal. 516, 519, [49 Pac. 455].) Except, therefore, for the reference to the map, we have in the assessment the same description as that contained in plaintiff's complaint.

A substantially similar description—viz. "Lots in Leibrandt Tract, Blk F, Nos. 13, 14, 15, 16, 17 and 18"—was held insufficient in *Miller* v. *Williams,* 135 Cal. 183, [67 Pac. 788], but in that case there was no evidence introduced to show that the description in the assessment was sufficient to identify the property. Here we have the stipulation as to the map of the Pellissier tract recorded in the office of the county recorder, showing this lot, which stipulation must be taken as meaning that there was only one such map, and that this map showed but one lot 5 in block K in said tract. It may be conceded that the description was not in compliance with subdivision 3 of section 3650 of the Political Code, providing for the listing of city and town lots as follows: "City and town lots, naming the city or town, and the number of the lot and block, according to the system of numbering in such city or town, and the improvements thereon." (*Miller* v. *Williams,* 135 Cal. 183, [67 Pac. 788].) But it is not essential that property situated in a city or town, even though it be a city or town lot, should be listed in accordance with this provision. By subdivision 2 of the same section it is provided that land must be listed "by township, range, section, or fractional section; and when such land is not a congressional division or subdivision, by metes and bounds, *or other description sufficient to identify it,*" and any land, wherever situated, may be listed under this provision. The object of subdivision 3 of section 3650 was to obviate the necessity of describing each lot by metes and bounds or other description sufficient to identify it, and to render an assessment made in accord therewith equivalent to an assessment under subdivision 2, but the assessing officer is still at liberty to assess under subdivision 2 if he so desires. (See *Davis* v. *Pacific Imp. Co.,* 137 Cal. 245, 247, [70 Pac. 15].)

The question, then, is as to whether the description here given was "sufficient to identify" the land. It may be assumed that it was of such a nature as to indicate that it could only be exactly located by reference to some map or plat, and that as it referred to no such map or plat it did not *prima facie* sufficiently identify the land (*Miller* v. *Williams,* 135 Cal. 183, [67 Pac. 788]), as would a description by name, such as "Forks House Ranch," or a description such as "house and lot on the north side of Main Street, Michigan

Bluffs, occupied by A. Ferguson as a tinshop." (See *People*
v. *Leet,* 23 Cal. 161.) In the case just cited it was substantially
said that a description of a tract of land by name is *prima
facie* sufficient in an assessment, as it is presumed that the
tract and the extent of its boundaries is well known by the
name.

It was, however, permissible to show, in aid of this descrip-
tion, that it was in fact sufficient to identify the land, and,
in this behalf, to show the recorded map of such Pellissier
tract, designating with certainty the property referred to in
the assessment. If by such evidence it was made to appear
that there was such a recorded map, and only one such map,
or, if more than one, no difference therein so far as the
assessed property was concerned, the evidence was sufficient
to sustain a conclusion that the assessment sufficiently iden-
tified the property. The trial court had the right to assume,
in the absence of a showing to the contrary by the person
assailing the description, that there was but one Pellissier
tract in the county of Los Angeles, and that this tract and
the extent of its boundaries were well known by that name.
(*People* v. *Leet,* 23 Cal. 161.)

The rules which should be applied in determining the ques-
tion as to the sufficiency of a description in an assessment
are most elaborately and clearly stated in the opinion in *Best*
v. *Wohlford,* 144 Cal. 733, [78 Pac. 293], the most recent
expression of this court upon the subject. It is true that such
case involved a question as to the sufficiency of the description
of lands outside of a city or town, made under a provision
similar to subdivision 2 of section 3650 of the Political Code,
but there is no material difference between that case and this,
so far as the question under discussion is concerned. The
question there was, as here, as to the sufficiency of the assess-
ment description to identify the property. The description
there was in an irrigation district assessment, and, so far as
material to the question we are discussing, was, "Lot four
(4) block one hundred seventy-eignt (178) 14.42 acres,
Rancho Rincon del Diablo," which rancho was shown to con-
stitute the whole irrigation district. No map of said rancho
was referred to in the assessment or collector's deed. The
judgment against the claimants under the tax-deed was
reversed because the trial court had refused to allow proof

that there was at the time of the assessment but one lot 4 in block 178 in said rancho, and that such fact was then well known, the claimants having sought to introduce in evidence in this behalf the map or plat of said rancho on file in the office of the county recorder. The effect of the opinion in that case is that the real and only essential, so far as the description is concerned, is that it should be sufficient in itself to definitely inform the property-owner as to the exact property assessed. This much, of course, has always been considered essential, the owner being entitled to know with certainty what land is charged with the tax. This knowledge being afforded, the whole purpose of the description under the present revenue law, whereby all property delinquent for taxes is declared sold to the state for taxes, penalties, and costs, is subserved. It was expressly recognized in *Miller* v. *Williams,* 135 Cal. 183, [67 Pac. 788], that much of the reasoning in support of the conclusion as to the insufficiency of the description would have no application under the new system. Under this system the possible purchaser who would pay the tax for the smallest portion of the land is eliminated, and the property-owner has no longer any ground upon which to urge that his rights may have been injuriously affected by reason of the fact that the description does not on its face at once certainly identify the property to all possible purchasers, and for this reason does not bring the return at the sale that it otherwise would.

It is said in *Best* v. *Wohlford,* 144 Cal. 733, [78 Pac. 293], that the provision in the law that the description must be "sufficient to identify" the property implies that evidence may be received, not for the purpose of helping out a defective description, or to show the intention with which it was made, or to resolve an ambiguity in its terms,—none of which things can be done,—but to show the sufficiency of the description and apply the description given to the surface of the earth; and further, that the question as to whether the description is sufficient to identify the land is a question of fact to be determined from the evidence presented upon that issue. The court further said: "The designation of a tract of land as a portion of a larger tract by number and block, without any reference to a map, may be sufficient to identify it, and if so the omission to refer to a map is not fatal to the description.

If reference is made to a map, the map thereby becomes a part of the description; and may be read in evidence to identify the land, by showing that it is delineated thereon according to the recital; and although it is not competent to show that any particular map was intended, if none is referred to, yet if it can be shown that there is only one map of a tract which includes the lot in controversy, upon which this lot is delineated or designated, and that that map is well known and generally accepted as authentic, it may be received in evidence as tending to identify the land before the court.'' While general expressions are to be found in some of the opinions of this court as to what is required to appear on the face of the assessment that tend to support plaintiff's contention, there is no decision in conflict with the views expressed in *Best* v. *Wohlford*, 144 Cal. 733, [78 Pac. 293]. In *Miller* v. *Williams*, 135 Cal. 183, [67 Pac. 788], the most favorable case to him, there was no attempt in the trial court to show the sufficiency of the description to identify the property, and the question as to the right to show this in aid of the assessment was not discussed. As to the cases cited in *Miller* v. *Williams,* in support of the statement that failure to refer to a map of a tract in an assessment has been held fatal, *Labs* v. *Cooper*, 107 Cal. 656, [40 Pac. 1042], involved a street assessment simply of ''all, lot 6, block D & E—16 and 17,'' and there was absolutely nothing to indicate of what larger tract or property these lots and blocks constituted subdivisions. *Cadwallader* v. *Nash,* 73 Cal. 43, [14 Pac. 385], was a case of a deed describing land by reference to a map, where there were two maps, and the description given rendered it uncertain as to which map was referred to. *Keane* v. *Canovan,* 21 Cal. 291, [82 Am. Dec. 738], was a case where by reason of failure to state a direction it was impossible to locate the lot, and *People* v. *Mahoney,* 55 Cal. 286, was a case where the description was so indefinite upon its face that the taxpayer could not know therefrom the precise property charged against him. None of these cases are applicable here. The description given must always of course be sufficient to apprise the owner as to the exact property assessed to him, but when the description is such that, in the light of the knowledge which it must be presumed is possessed by property-owners of the community in which the property is situated, it accomplishes

this result, it is sufficient for all assessment purposes, although
evidence may be necessary to apply the description to the
surface of the earth, and evidence is always admissible to
show this in support of the description, just as it is admissible
to show against a description apparently clear and certain on
its face, that, by reason of other circumstances, it is uncertain
or doubtful in its application. This is substantially the doctrine
of *Best* v. *Wohlford,* 144 Cal. 733, [78 Pac. 293], and it is
fully supported by the reasoning of the opinion and by the
numerous authorities cited therein. It being made to appear
to the satisfaction of the trial court that there was but one
map of the Pellissier tract, which map was a public record,
and that this map showed but one lot 5, block K, in such tract,
there was enough, in the absence of other evidence tending to
impeach the effect of this, to justify the conclusion of the trial
court that the description in the assessment was sufficient to
show with absolute certainty to the owner the exact property
assessed to him, and that the same, therefore, complied with
the requirements of subdivision 2 of section 3650 of the
Political Code.

The other objections to the assessment require very little
notice. It is urged that the name of the 'city or town wherein
the property is situated is not stated, as required by subdi-
vision 3 of section 3650 of the Political Code, although the
lot is assessed and valued under the head of "city and town
lots." But the naming of the city or town is absolutely essen-
tial to the validity of the assessment only when the special
mode of assessment prescribed by that subdivision is followed
—viz. where only the number of the lot and block, accord-
ing to the system of numbering in the city or town, is given.
While the name of the city or town might advantageously be
given in assessments under subdivision 2 of section 3650, it is
not essential if the description otherwise sufficiently identifies
the property sought to be charged. It is also claimed that the
assessment does not show in separate columns "the school,
road, and other revenue districts in which each piece of prop-
erty assessed is situated," as required by subdivision 13 of sec-
tion 3650 of the Political Code. We have already stated the
facts in this regard, and they, in our judgment, show a sub-
stantial compliance with this provision, indicating "Rosedale"
as the name of both road and school district. In *Knott* v.

*Peden,* 84 Cal. 299, [24 Pac. 160], evidence introduced showed the assessed property to be in a certain road district (which is not the case here, there having been no showing in this behalf), and there was no entry at all in the road district column. There is nothing in the record to show that any portion of the tax against this property was for road-district purposes. The only recital in the deed to the state in this regard was "for county purposes, the sum of $1.77-100; for state purposes, the sum of $39-100."

It is practically admitted that if the title of plaintiff's intestate passed to the state by virtue of the tax proceedings, defendant Harlan has regularly succeeded thereto. We are satisfied that such must be held to be the effect of those proceedings, and that the conclusion of the trial court was correct.

The judgment and order are affirmed.

Shaw, J., McFarland, J., Henshaw, J., Lorigan, J., Sloss, J., and Beatty, C. J., concurred.

Rehearing denied.