[Civ. No. 1665.   Third Appellate District.—April 21, 1917.]

R. E. HOUGHTON, Plaintiff and Appellant, v. KERN VALLEY BANK et al., Defendants and Appellants; NG HON KIM, Intervener and Respondent.

TAXATION — ASSESSMENT — INSUFFICIENT DESCRIPTION — CONFLICTING MAPS.—An assessment of lots for the purposes of taxation as lots 1, 2, and 3 in block 132 of the town of Bakersfield, without reference to any map, is void for insufficient description, where it is shown that there is but one block 132, and three recorded maps of the town, upon each of which the lots are delineated in different parts of the block.

ID.—PURPOSES OF DESCRIPTION.—The purposes to be subserved by the description are to enable the owner to discharge his land from the lien of the assessment by paying the same, and also, in case the land shall be sold to satisfy the lien, that bidders may know what land is offered for sale, and that the purchaser may receive a sufficient conveyance.

APPEAL from a judgment of the Superior Court of Kern County, and from an order denying a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Octave G. Du Py, for Plaintiff and Appellant.

Rowen Irwin, for Kern Valley Bank, Defendant and Appellant.

C. Brower, *in pro. per.*, Defendant and Appellant.

J. W. P. Laird, and Rowen Irwin, for H. A. Blodget, Defendant and Appellant.

Olney & Olney, for Mills College, Assignee, etc., Defendant and Appellant.

W. S. Allen, and Fred E. Borton, for Thos. H. Brown, Defendant and Appellant.

Emmet H. Wilson, and G. C. De Garmo, for Leslie R. Hewitt, Assignee, etc., Defendant and Appellant.

Nancy Ella Houghton, *in pro. per.*, Defendant and Appellant.

Chas. N. Sears, for Intervener and Respondent.

CHIPMAN, P. J.—The action originally was in partition and involved numerous different lots of land owned by many different persons. Respondent, Ng Hon Kim, filed a complaint in intervention in the nature of an action to quiet title, alleging ownership in fee of certain three of the lots situated in the city of Bakersfield, Kern County. Intervener had judgment in his favor from which plaintiff and defendants appealed to the supreme court.

The judgment and order denying motion for a new trial in favor of intervener were reversed. (157 Cal. 289, [107 Pac. 113].) The complaint described the property as lots 1, 2, and 3, block 132, in the Baker Homestead Tract, according to the map of said tract filed in the office of the county recorder of Kern County, state of California, on the third day of April, 1889. Intervener claimed title under delinquent tax

sales. The complaint in intervention described the property as "Lots one, two, and three in block one hundred and thirty-two situate in the city of Bakersfield, county of Kern, state of California," but made no reference to any map. We quote from the opinion: "No map showing the location of any lots or blocks was introduced in evidence. Under the decisions of this court there seems to be no escape from the conclusion that the assessment is *prima facie* invalid." The assessment-book was offered in evidence and, under the heading "Description of Property," showed entries as follows: "In the town of Bakersfield, lot 1, 2, 3," and under the heading "Block" the figures "132," appeared. The theory upon which the decision proceeded was "that a description of this kind is of such a nature as to indicate that the property can ordinarily be located only by reference to some map or plat, and no such map or plat being referred to as being in existence, the description is *prima facie* insufficient. There is no presumption, in the absence of such a reference, that there is such a map in existence." In remanding the case the court said: "Upon a new trial it will, of course, be competent for the intervener to offer evidence for the purpose of showing that the description was sufficient. To this end he may show, if it be the fact, that there was of record at the time of the assessment a map by the aid of which the description of the lots in question would serve to fully and completely identify and locate them."

At the second trial the evidence submitted at the former trial was introduced by stipulation, and is in the transcript on page 31 down to the middle of page 66, at which point the transcript shows as follows: "Thereupon the trial proceeded and the intervener offered in evidence a map entitled Map of the 'Baker Homestead Tract,' which was indorsed: 'Filed in the office of the County Recorder of Kern County, California, this 3rd day of April, 1889, N. R. Packard, County Recorder,' and the same was admitted in evidence." The plaintiff and defendants thereupon, "with a view of showing that there were two maps of block 132 in Bakersfield, and that the lots in the blocks were not described in the same manner, nor did they cover the same land, and with a view of showing that there existed an uncertainty in the description of the land that was carried into the assessment, offered in evidence two maps of Bakersfield." The transcript is as follows:

"Thereupon the plaintiff and defendants offered in evidence a map entitled 'Map of Bakersfield, Kern County, Cal.' and

indorsed : 'Filed in the office of the Recorder of Kern County, Cal., August 17th, 1875, F. W. Craig, Recorder,' and the same was admitted in evidence.

"The plaintiff and defendants also offered in evidence a map entitled 'Map of Bakersfield and Sumner, Kern County, California,' and indorsed 'Filed in the office of the County Recorder of Kern County, June 5th, A. D. 1888, N. R. Packard, County Recorder,' and the same was admitted in evidence."

These maps were by stipulation omitted from the transcript with an understanding that either party might, if necessary, produce them for inspection by the reviewing court. Appellants have presented in their opening brief, at page 13, a diagram which shows without controversy the situation of the lots in question on the three different maps, as follows:

Block 132, Bakersfield, showing division into lots as delineated on map offered in evidence by the intervener, respondent herein, entitled "Map of Baker Homestead Tract, Bakersfield," filed in the office of the County Recorder, Kern County, California, this 3d day of April, 1889, N. R. Packard, County Recorder.

Block 132, Bakersfield, showing division into lots as delineated on the two maps offered in evidence by the plaintiff and

defendants, appellants herein, entitled Map of Bakersfield, Kern County, California, the first being indorsed, Filed in the office of County Recorder of Kern County, Cal., August 17, 1875, F. W. Craig, Recorder; the second map being indorsed, Filed in the office of Kern County Recorder, June 5, 1888, N. R. Packard, County Recorder.

An inspection of these maps will show that block 132 is the same size in all three of them—264 feet square; that, on the map of Baker Homestead Tract block 132 is divided into twelve lots fronting east and west on P and Q Streets with an alley between of 20 feet in width; that lots 1, 2, and 3 front on P Street with a depth of 122 feet and, with half of the alley, would make one-fourth of the block in the northwest corner. The other maps show that the block is surrounded by the same streets but that the lots front north and south on Twenty-fourth and Twenty-fifth Streets, and the block is divided into eight lots. Lots 1, 2 and 3 on those maps have a uniform width frontage of 66 feet and a depth of 115½ feet, which would be three-eighths of the block, less half of an alley, and are in the northeast corner of the block and have a frontage of 198 feet on Twenty-fifth and 115½ on Q Street. On the face of the maps it would seem impossible to identify the lots in question.

There was but little oral testimony which we give in its entirety, as follows:

"Mr. Sears: What is your name?   A. J. M. Jameson.

"Q. What office, if any, do you hold in this county?   A. County assessor.

"Q. How long have you been assessor of this county?   A. Since 1899.

"Q. You have the supervision over the assessment of property in this county?   A. Yes, sir.

"Q. I will ask you if you know anything as to this map, August 17, 1875?   A. Well, I have seen it before.

"Q. Will you observe lot 132 upon this map?   A. Yes, sir.

"Q. Now I will show you another map here sought to be offered in evidence by the plaintiff which shows to have been filed in the recorder's office on the 5th day of June, 1888. Have you ever seen that map?   A. I think so.

"Q. Known as Bakersfield and Sumner?   A. I think I have.

"Q. Will you observe as to block 132 upon that map of Bakersfield?   Now, in making your assessments, do you know as to whether or not these maps are in use, or whether or not they have been abandoned in making the assessment of property in this city, and in this county?   A. Well, it would take a comparison of a map I think to tell that.   In making my assessment, I have always gone by the official map at the time the assessment was made, and I could not say as to that.

"Q. In making your assessments in this case, and involving the property involved in this case, being lots 1, 2 and 3, block 132, the asssessment shows that the same was assessed at that time, at the time of the assessment as shown in this case, to the city of Bakersfield.   I will ask you as to whether or not at the time of the date of those maps there, there was any city of Bakersfield?   A. How is that?

"Q. Whether there was any city of Bakersfield, known as the city of Bakersfield.   A. It was not incorporated—that is, I don't know—there was an old incorporation a good many years ago, I don't know anything about that, but my memory is that there was an old incorporation a good many years ago, which fell through with; but the later incorporation came later.

"Mr. Houghton: Of which the record is the best evidence of when the city was incorporated, disincorporated and reincorporated.

"The Court: That is true.

"Mr. Sears: The maps themselves merely show 'Bakersfield' and 'Bakersfield and Sumner,' while the assessment says 'Lots 1, 2 and 3 in Block 132, in the City of Bakersfield.'

"Q. Now, what has been your custom and procedure in making assessments in this city as to the descriptions as in this case, for instance, in property in the city of Bakersfield?

"Mr. Houghton: We object to it as incompetent what the custom has been, the question is, what has been done in this case.

"Mr. Sears: I think I said 'in this case.'

"Mr. Houghton: The record speaks for itself as to what has been done in regard to the assessments.

"The Court: He can tell how he made this assessment if you want him to. A man might have a custom and it might be wrong, and they would not be bound by it.

"Mr. Sears: The language in this case is 'Evidence showing the system of assessment.'

"The Court: You can show that.

"Mr. Sears: What has been the system of assessments of property in this city? A. What do you mean, in descriptions, in describing?

"Q. Yes, as in this case, the property is situated in the city of Bakersfield? A. I describe it by lots and blocks.

"Q. Have you found that that has been generally sufficient so that parties may identify the property?

"Mr. Houghton: Object to it as irrelevant, incompetent, and immaterial.

"The Court: The objection is sustained.

"Mr. Sears: Note an exception.

"Q. Now, in making the assessments in this case, as 'Lots 1, 2 and 3, in Block 132,' if there were another map covering the same, what do you do? A. Another map covering the same property?

"Q. The same block for instance. A. You mean if there was a duplicate block 132 in the city of Bakersfield?

"Q. Yes, sir. A. If there was a duplicate block in the city of Bakersfield, it would be necessary to designate it, in my opinion, as of a certain tract.

"Q. Now, in assessing the property here described as 'Lots 1, 2 and 3, in Block 132,' and it appeared that that was part of the Baker Homestead Tract, has it been the general system of assessing property then, as Lots 1, 2 and 3, in Block 132

of the Baker Homestead Tract? A. No, because there is only one 132 in the city of Bakersfield. I think a few instances where people took the pains to write in 'Baker Homestead Tract' in giving the statement in that that description would probably be carried into the roll from the statement, but in an instance where a person gave in lots 3 and 4 or any other lots in block 132, the description of 'Block 132' I considered sufficient for the description of the property, because there is only one block 132 in the city of Bakersfield.

"Q. There is at this time only one block 132 in the city of Bakersfield, and that is in the Baker Homestead Tract? A. Yes, sir.

"Mr. Sears: Take the witness.

"Mr. Houghton: That is all."

The assessment-book of the property showed as follows: "Unknown Owners—In Town of Bakersfield—Lots one, two, three, Block 132, Value $115.00. Total tax, $1.90. School tax, 29 cents."

In all the instruments relating to the assessment, and in all subsequent conveyances, this description is followed and in none of them is there any reference to a map. It thus appears that there were, at the time these lots were assessed, three maps of record of the town of Bakersfield—one entitled "Baker Homestead Tract," one entitled "Map of Bakersfield," and one entitled "Bakersfield and Sumner," both of the latter having been filed before the first one above mentioned. The most that can be said of the testimony of the assessor is that in the assessment he described the property by "lots and blocks"; that it has not been the general system of assessing these lots as of the Baker Homestead Tract, "because," as the assessor stated, "there is only one 132 in the city of Bakersfield." He testified: "I think in a few instances where people took the pains to write in 'Baker Homestead Tract' in giving the statement," that description would probably be carried into the roll, but where a person gave in "lots in block 132 the description of 'block 132' I considered sufficient for the description of the property, because there is only one block 132 in the city of Bakersfield. Q. There is at this time only one block 132 in the city of Bakersfield, and that is the Baker Homestead Tract? A. Yes, sir." It is not disputed that these three maps relate to the same lots and block and the assessor expressed the opinion that "if there was a

duplicate block in the city of Bakersfield, it would be necessary to designate it as of a certain tract.'' The witness testified: ''In making my assessment, I have always gone by the official map at the time the assessment was made,'' but he could not say whether the maps of 1875 and 1888 were in use when he made his assessment, and he did not state which map was the official map. When the case was remanded it went back with the statement that intervener ''may show, if it be the fact, that there was of record at the time of the assessment [the assessment was made in 1896] a map by the aid of which the description of the lots in question would serve to fully and completely identify and locate them.''

In the case of *Baird* v. *Monroe,* 150 Cal. 560, [89 Pac. 352], a case cited with approval by the court when the present case was decided, the question of the sufficiency of the description was involved where a party was claiming under a tax title. In discussing the use of a map for identification of the property, the court said: ''It was, however, permissible to show, in aid of this description, that it was in fact sufficient to identify the land, and, in this behalf, to show the recorded map of such Pellissier tract, designating with certainty the property referred to in the assessment. If by such evidence it was made to appear that there was such a recorded map, and only one such map, or, if more than one, no difference therein so far as the assessed property was concerned, the evidence was sufficient to sustain a conclusion that the assessment sufficiently identified the property. The trial court had the right to assume, in the absence of a showing to the contrary by the person assailing the description, that there was but one Pellissier tract in the county of Los Angeles, and that this tract and the extent of its boundaries were well known by that name. (*People* v. *Leet,* 23 Cal. 161.)'' The court then quoted from *Best* v. *Wohlford,* 144 Cal. 733, [78 Pac. 293], as follows: ''Parol evidence will not be admitted to help out a defective description, or to show the intention with which it was made, or to resolve an ambiguity in its terms. . . . If reference is made to a map, the map thereby becomes a part of the description, and may be read in evidence to identify the land, by showing that it is delineated thereon according to the recital; and although it is not competent to show that any particular map was intended, if none is referred to, yet if it can be shown that there is only one map of a tract which

includes the lot in controversy, upon which this lot is deline-ated or designated, and that that map is well known and generally accepted as authentic, it may be received in evi-dence as tending to identify the land before the court.''   (See *Furrey* v. *Lautz*, 162 Cal. 397, [122 Pac. 1073]; *Campbell* v. *Shafer*, 162 Cal. 206, 207, [121 Pac. 737]; *McLauchlan* v. *Bonynge*, 15 Cal. App. 239, 240, [114 Pac. 798].)

There was no evidence that these lots were assessed in accordance with any existing system of numbering lots and blocks as shown by but one map, nor is there evidence that the lots delineated on all the maps introduced are the same and embrace the same land.   The maps, in our opinion, add to the uncertainty of the description in the assessment rather than ''to fully and completely identify and  locate them.'' Bearing in mind that there is but one block 132 in the city of Bakersfield, and that all three of these maps refer to that and no other block, it is plain enough that lots 1, 2, and 3 as delineated on the 1889 map are in a different part of the block and do not embrace all the land referred to by lots 1, 2, and 3 in the other maps.   ''The purposes to be subserved by the description,'' said the court, in *Best* v. *Wohlford*, 144 Cal. 733, [78 Pac. 293], ''are to enable the owner to discharge his land from the lien of the assessment by paying the same; and also, in case the land shall be sold to satisfy the lien, that bidders may know what land is offered for sale, and that the purchaser may receive a sufficient conveyance.   The assess-ment becomes a lien only upon the land which is described in the assessment-book, and it is therefore essential that such description be sufficiently definite to inform the owner whether any of his land is burdened by the lien.   The description must be such that the land claimed by virtue of the deed can be identified or located upon the ground by means thereof.''

The judgment rested upon the finding of the trial court— ''That the said property was duly assessed by the county assessor of Kern County, in the year 1896, for the year 1896.'' This finding is challenged on the ground ''that the descrip-tion of the land in said assessment was not sufficient and on account of the want of such description the assessment was void.''   We think that this finding is not sustained by the evidence.

The judgment and order are, therefore, reversed.

Hart, J., and Burnett, J., concurred.