[S. F. No. 2067.   Department One.—September 10, 1902.]

SAMUEL DAVIS, Respondent, v. PACIFIC IMPROVE-
MENT COMPANY et al., Respondents; JOHN G.
KLUMPKE, Appellant.

Taxation—Assessment—Description of Beach Block—Metes and
Bounds.—Assessments for the years 1883 and 1884 of a beach block
of land in the city and county of San Francisco, (being part of the
land in which an estate for ninety-nine years was granted to the city
by the state under the act of March 26, 1851,) made by metes and
bounds, were not invalidated by failure to specify the lots included
therein by number, or to specify the number of the block.  That act
does not provide for any subdivision, and it does not appear that
any system of numbering the lots and blocks had been adopted or
was in existence in San Francisco.

Id.—Object of Statute—Number of Lot and Block.—The object of
section 3650 of the Political Code, providing for giving the num-
ber of a city lot and block according to the system of numbering
in such city and town, is to obviate the necessity of describing
each lot by metes and bounds.  An assessment of a lot by metes and
bounds is not invalidated by reason of the fact that it would be as
fully identified by a description by number of the lot and block.

Id.—Tax Deed—Evidence of Delinquent List—Verified Copy—Loss
of Original.—A tax deed is evidence that the assessor had prepared
a delinquent list for the year for which the land assessed was sold
for taxes.  A copy of the delinquent list, duly verified and filed, as
required by section 3769 of the Political Code, establishes the
original in the absence of evidence to the contrary; and the loss
of the original cannot affect the rights of the purchaser at the tax
sale.

Id.—Description of Property Delinquent.—The description of the
property delinquent need not be identically the same as in the
assessment-roll; and it is sufficient if the delinquent list gives
such a general description as will identify the property and notify
the owner of the land that the taxes thereon are delinquent, and
that the lot is to be sold.

Id.—Change of Assessment by State Board of Equalization—Re-
citals in Tax Deed.—The statute does not require the tax deed to
recite any change in the assessment made by the state board of
equalization; and the recital therein of the original assessment is a
sufficient compliance with the statute.

APPEAL from an interlocutory decree of the Superior
Court of the City and County of San Francisco and from an
order denying a new trial.  J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

R. H. Countryman, for Appellant.

Freeman & Bates, for Samuel Davis, Respondent.

J. E. Foulds, for Pacific Improvement Company, Respondent.

Boyd & Fifield, for Boyd & Cunningham, Respondents.

W. M. Cannon, for M. McCann, Respondent.

Lloyd & Wood, for Harriet Land et al., Respondents.

HARRISON, J.—The plaintiff brought this action for the partition of a block of land in San Francisco, known as South Beach Block 25, alleging in his complaint that he and the Pacific Improvement Company is each the owner of an undivided half thereof, and that the other defendants, including the appellant herein, "claim to have some interest in the premises described in the complaint herein under a common source of title, but the character and extent of the interest, if any they have, are to the plaintiff unknown"; and prayed that "all the defendants herein be required to exhibit and establish their respective claims of title in and to the said premises," and that the court partition the property among the persons found entitled thereto. In his answer to the complaint the appellant set forth that he is the owner in fee of certain designated parcels of the land of which partition was sought. The block in question is a part of the land of which an estate of ninety-nine years was granted to the city of San Francisco by the state under the act of March 26, 1851. (Stats. 1851, p. 307.) The court found that the above estate which was granted to the city of San Francisco is vested in the plaintiff and the defendant Pacific Improvement Company, and that the appellant has no title or interest therein, and entered an interlocutory decree directing a partition of this estate between the plaintiff and the Pacific Improvement Company. From this interlocutory decree and from an order denying a new trial the present appeal has been taken.

At the trial of the cause the appellant, in support of his claim, introduced in evidence certain tax deeds made to him

July 13, 1886, by the tax collector of the city and county of San Francisco for the parcels of land of which he claimed to be the owner, and his claim of title depends upon the validity of these deeds. One of these deeds was for a parcel of the land sold to him for delinquent taxes for the fiscal year ending June 30, 1883, and the others for the fiscal year ending June 30, 1884. No objection was made on behalf of the plaintiff to the introduction of the deeds in evidence, and in form they comply with the requirements of the Political Code, under which they are made *prima facie* evidence of certain facts and conclusive as to others. The plaintiff, however, contends that certain evidence introduced by him overcame the *prima facie* evidence of the deeds, and deprived them of any effect as conveyance of title.

1. The plaintiff introduced in evidence certain maps or plats of the block in question upon which the block had been subdivided into lots, and contends that as the assessment was not made in accordance with these subdivisions, it was unauthorized and the subsequent proceedings were invalid.

Section 3650 of the Political Code prescribes the manner in which property is to be assessed and the form of the assessment-book. After declaring that all the property to be listed within the county shall be specified in separate columns, under appropriate heads, it gives as the heading for one of these separate columns:—

"3. City and town lots, naming the city or town, and the number of the lot and block according to the system of numbering in such city or town, and improvements thereon."

The assessments upon which the tax deeds of the appellant were made describe the land by metes and bounds, and not by any number or block. One of the plats or maps introduced by the plaintiff is the map commonly known as the Eddy or Red Line map, which is claimed to have been made under the provision of section 5 of the aforesaid act of March 26, 1851. Of this map it is sufficient to say that, although block 25 thereon is subdivided by lines extending across the block, and these subdivisions are bisected, the several subdivisions are not numbered, nor is their size given, and consequently it would be impossible for them to be assessed by number. The object of the above provision of the Political Code is to obviate the necessity of describing each lot by metes and bounds and to

render an assessment by number equivalent to one made by metes and bounds. But an assessment of land described by metes and bounds is not invalidated by reason of the fact that it would be as fully identified by giving its description by the number of the lot and block in which it is located. It may also be said that the subdivision of the land granted to the city by the act of March 26, 1851, either into blocks or lots, was not authorized by the act, and that the purpose for the map authorized by the act was to make a line of demarcation between the upland and the tide-land. There was no evidence that the map had ever been officially declared a map of the city of San Francisco.

In his brief the plaintiff refers to a map made in 1853 for the sale of the reversionary interest of the state in the land. It does not appear from the record that this map was offered in evidence, but from the copy set forth in the plaintiff's brief it appears that the subdivisions are radically different from those shown upon the Eddy map. This map was, moreover, prepared for the purpose of making a sale of the reversion held by the state, and does not affect the estate in the land covered by the partition, nor indicate that it was a part of the system of numbering in said city. The same observations may be made with reference to the map of the land prepared in the year 1868 from the one that had been made under the direction of the board of tide-land commissioners.

There was no evidence before the court that any "system" of numbering the lots and blocks had been adopted or was at any time in existence in San Francisco, and it appears that the land described in the tax deeds was for many years assessed under the same description as in the deeds. The fact that a single block has been subdivided into lots would not constitute a "system" of numbering, or indicate that other blocks were subdivided or numbered. In *Klumpke* v. *Baker*, 131 Cal. 80, where it did not appear that there was any system in San Francisco for the subdivision of the blocks into lots, it was held that the action of the assessor in subdividing the blocks for the purpose of assessment, even if erroneous as to ownership, does not invalidate the assessment, especially where the owner does not give to that officer a description of the land claimed by him.

2. It is next objected by the plaintiff that the assessor did

not prepare a delinquent list for either of the years 1882 or 1883, and consequently there was no legal notice of the sale.

The court does not find, nor was there any evidence, that the delinquent list was not prepared for either of these years, and under the provisions of the statute the deeds themselves became evidence that it was prepared. By section 3769 of the Political Code the tax collector is required to file with the county recorder a copy of his publication of the delinquent list, with his affidavit attached thereto that it is a true copy of the same, and by the same section this affidavit is made *prima facie* evidence of this fact. Copies of the delinquent list for the years 1882 and 1883, duly verified and filed, as thus required, were in evidence before the court, and in the absence of any direct evidence to the contrary these copies must be held to have established the existence of the originals. The inability of the auditor to produce them at the trial was not equivalent to evidence that they had never been made, nor would their loss or destruction after their function had ceased deprive the purchaser of the rights acquired by the deed.

The authority of the tax collector to publish the delinquent list is given in section 3764, which provides that the list so published "must contain the names of the persons and a description of the property delinquent and the amount of taxes and costs due, opposite each name and description." The enumeration of these particulars is equivalent to a declaration that none other need be published. The provisions of sections 3759-3762 are for the guidance of the auditor and tax collector in keeping the account of taxes chargeable to the latter officer, and determining the amount for which he is to account.

In the assessment for the year 1882 the property sold for the delinquent tax of that year is described as follows: "Beginning at W. cor. of George and Hubbell sts., thence running 160 5-12 ft. S. W. on the line of Hubbell street; thence running at right angles N. W. 120 ft.; thence running at right angles N. E. 160 5-12 ft.; thence running at right angles to the point of beginning S. E. 120 ft." In the delinquent list for that year the description is as follows: "Lot W. cor. George and Hubbell sts., th. S. W. 160 ft. 5 inches by 120 ft. in depth." A full explanation of these abbreviations is given in the assessment-roll and also in the publication of the de-

linquent list, and the latter also contains a notice that the property offered for sale will commence at the initial point given in the description of the property, and will run for quantity along the boundary line first named in said description, extending the entire depth of the lot advertised. Section 3764 does not require the publication of the delinquent list to contain the same description as is in the assessment, or to give the amount of the assessment, but only requires it to contain "*a* description of the property delinquent" and "the amount of taxes and costs due." That the amount of the taxes and costs due was correctly given in the present case appears from the assessment-roll and a computation of the amount of the tax with the costs authorized by statute added thereto. The provision of section 3765, requiring the tax collector to publish with the delinquent list a notice that "the real property upon which the taxes are a lien" will be sold unless the delinquent taxes are paid, also implies that it is sufficient to give such a general description as will identify the property. (See *Rollins* v. *Woodman*, 117 Cal. 516.)

The object of requiring a description of the property in the delinquent list is to notify the owner of the land that the taxes thereon are delinquent, and that the lot is to be sold, and if the description is sufficient to give this notice it must be held to be a sufficient compliance with the statute. The rule that at one time prevailed, requiring the claimant under a tax deed to make strict and exact proof of every step to be taken in the proceeding under which the property was sold, has been greatly relaxed by modern legislation, and the speculative nature of purchases at tax sales has been thereby removed. Such legislation in this state is shown by the provisions of the Political Code making the deed *prima facie* evidence of all acts necessary for acquiring jurisdiction to make the sale, and conclusive as to all proceedings taken in the exercise of the jurisdiction thus acquired, and also by the provision in section 3885 that no "informality" in any act relating to the assessment or collection of taxes shall render the tax illegal. The duty of the owner of land to pay the taxes thereon and the right of the state to enforce their collection is not changed, but the inducement that under the former system was held out to the owner not to pay the taxes, in the hope that some trifling and immaterial defect in the

proceedings might be shown to defeat the effect of the sale, has been taken away. The legislature doubtless considered that, in case of his failure to pay the taxes when due, his rights, as well as the rights of a purchaser at the tax sale, will be better conserved by throwing upon him the burden of establishing the invalidity of the sale, and at the same time declaring that mere irregularities in the proceedings shall not defeat the rights of the purchaser. He is still at liberty to show that no jurisdiction was ever acquired to make the sale, but by incorporating into the statute the principle that official duty is presumed to have been properly performed the legislature has cast upon him the burden of showing the contrary. (See *Rollins* v. *Wright,* 93 Cal. 395.) It cannot be said that there is any ambiguity in the description given above in the notice of sale, or any uncertainty as to the property thereby referred to, or that the owner of the land was not fully notified of the property upon which the taxes were delinquent. The description in the delinquent list, as well as that in the notice of sale, is to be read in the light of the assessment and in connection therewith, and the variation in the present case between the one given in the assessment and that given in the notice of sale is, at the most, no more than an "informality," not affecting the substance of the proceeding or capable of being misconstrued.

The same considerations are applicable to the descriptions of the property in the notice of sale for the succeeding year.

3. In the year 1883, the state board of equalization increased the assessment-roll of the city and county of San Francisco by adding thereto fifteen per cent upon the amount fixed by the county assessor. In the tax deeds which were made upon the sales for this year the assessment recited therein is given at the amount at which the property was originally assessed by the county assessor. The plaintiff contests the validity of the deeds upon the ground that the assessment is not stated therein in accordance with the action of the state board of equalization.

Section 3695 of the Political Code provides that if any change is made by the state board of equalization in the assessment-roll of a county, the clerk of that board shall transmit to the county auditor a statement of such change and of the per centum to be added or deducted from the valuation

of such statement, (assessment?). Section 3730 requires the auditor upon the receipt of this statement to make the corresponding changes in the assessment-roll, "by entering the same in a column provided with a proper heading in the assessment-book." This, it appears from the transcript herein, was done in the present case. In *Wells, Fargo & Co.* v. *State Board of Equalization,* 56 Cal. 194, it was held that the function of the state board of equalization is limited to equalizing the assessment-rolls of the various counties as compared with each other, and that it has no power to increase or lower any individual assessment upon the rolls of the respective counties. Under the authority of this case, the action of the state board of equalization cannot be regarded as an "assessment" of the several lots of land, but merely as a direction to the county auditor to add to the various assessments thereof such an amount as will have the effect in the aggregate to make the entire assessment-roll of the county correspond in value with the assessment-rolls of other counties in the state. The fact that, by making this change, the basis upon which the amount of the tax for the several individual assessments is to be. computed will be changed, does not render the action of the state board an .assessment of the several parcels of land in the county, but is only an incidental consequence of its action. The statute does not require the tax deed to contain a recital of any changes that may have been made in the assessment, and we hold that the recital therein of the original assessment is a sufficient compliance with the statute.

Under the foregoing considerations it must be held that the evidence offered by the plaintiff was insufficient to overcome the effect given to the tax deeds by the statute, and that the court erred in finding that the appellant had no interest in the land sought to be partitioned, and that in its interlocutory decree it should have made provision for the appellant's interest therein.

The interlocutory decree and the order denying a new trial are reversed.

Garoutte, J., and Van Dyke, J., concurred.

Hearing in Bank denied.