[No. 4972. Decided December 10, 1904.]

WILLIAM F. HAYS, *Plaintiff*, v. S. A. CALLVERT *et al.*,
*as ex-officio Board of State Land Commissioners,
Defendants.*[1]

TIDE LANDS—APPRAISEMENT—RIGHTS OF CONTRACTOR EXCAVAT-
ING WATER-WAY—LIEN NOT DEPENDENT 'ON APPRAISEMENT—REMEDY
BY FORECLOSURE. Section 10 of the Act of March 9th, 1893, relating
to the excavation of waterways and the filling in of tide lands be-
longing to the state, which provides that, upon the letting of the
contract, the lands shall be appraised and never disposed of for
less than the appraised value, is not mandatory in requiring such
appraisement to be immediately made; and the contractor, who is
given a lien on the filled in tide lands, with an option under cer-
tain conditions to purchase the same at the appraised value, is not
entitled to a writ of mandamus requiring such appraisement to be
made, when the lands had already been sold by the state prior to
the completion of the contract; since the law does not require the
retention of the lands by the state, and the contractor's lien is not
dependent upon the appraisement, his remedy, after a sale of the
lands, being an action of foreclosure of the liens, as provided for
in the act.

Application to the supreme court, filed December 16,
1903, for a writ of mandamus, to compel the appraise-
ment of tide lands. Writ denied.

*Vance & Mitchell*, and *W. F. Hays*, for plaintiff.

*The Attorney General*, for defendants.

*L. C. Gilman*, *W. A. Peters*, *John H. Powell*, and
*H. R. Clise, amici curiae.*

MOUNT, J.—Original application for writ of man-
damus to compel the board of state land commissioners
to appraise certain tide lands. The petition alleges, in
substance, that on August 3, 1895, the state of Washing-
ton, by its duly authorized agent, the commissioner of

[1]Reported in 78 Pac. 793.

public lands, entered into a contract with W. F. Hays
and Frank Shay, pursuant to the act of March 9, 1893,
(p. 241) entitled, "An act prescribing the ways in which
waterways for the uses of navigation may be excavated by
private contract, providing for liens upon tide and shore
lands belonging to the state, granting rights-of-way across
lands belonging to the state," by which contract said Hays
and Shay agreed to excavate a certain waterway and fill
in certain tide lands therein named; that on February 26,
1896, the said parties agreed upon a modification of
the original contract, which was duly approved by the
governor; that thereafter the interests of Shay in said
contract were duly assigned to the petitioner Hays. The
terms and conditions of this contract, as alleged in the
petition, are stated in *Hays v. Hill,* 23 Wash. 730, 63
Pac. 576, and therefore need not be restated here. The
petition further alleges as follows:

"That on May 4th, 1896, the plaintiff fully entered
upon the performance of his said contract, and com-
menced driving piles for the construction of the bulkhead
as required by said contract, and procured for said pur-
pose several thousand piles necessary for the construc-
tion of said bulkheads and underwent an expense of sev-
eral thousand dollars for the getting ready and for the
object of fully carrying out and completing said work
provided by said contract, and fully performing the same
fully and legally; but on or about May 5th, 1896, while
so at work performing his said part of said contract,
plaintiff was duly notified by the commissioner of public
lands of the state of Washington, as was his right under
the law, that he had elected to exercise his right provided
by said contract, of changing the form of bulkhead to be
used by plaintiff under the terms of said contract, and
would proceed to formulate and prescribe further plans
for the construction of such new style of bulkhead which
would be required by the state in carrying out said con-

tract, and thereupon notified and required and ordered plaintiff to suspend operations under said contract until such plans and specifications for such new style of bulkhead should be determined upon and communicated to plaintiff and publicly announced. Thereupon said plaintiff, by order of said commissioner, acting for the state of Washington, suspended said work under said contract, and neither said commissioner nor said state has yet advised plaintiff of the kind of bulkhead required, though frequently requested by plaintiff so to do, yet at no time refusing to do so, nor has said commissioner withdrawn the order commanding this plaintiff to cease work on the said filling or in the fulfilling of his said contract; that shortly after the said action of the said commissioner aforesaid suspending operations on said work by plaintiff, and on or about, to wit, the 13th day of November, 1896, said commissioner further notified this plaintiff to further suspend operations under said contract on account of the proposed construction of the government canal known as the North Canal, referred to in said contract, but continued said contract in all its provisions and benefits, rights, and privileges, in everywise as the same was theretofore. And plaintiff has at all times since the commencement of the work upon said contract been ready to carry out the terms and conditions of said contract, and willing and prepared so to do, and would have done so within the time named in said contract if he had not been prevented from so doing by the aforesaid acts and omissions of said state of Washington; and plaintiff has at all times done and performed every requirement under said contract, on his part to be done and performed, to entitle him to the rights and benefits thereunder, and to perpetuate the lien upon said lands in question under said contract, as provided by a law and said contract; that immediately upon the execution of said contract, the contractors thereunder, to wit, William F. Hays and Frank Shay, demanded of the proper officials of the state of Washington, to wit, of the board of state land commissioners, upon whom was then devolved the function, power, and duty of the

appraisement of said tide lands, that the tide lands con-
tracted to be filled in by said described contract should
be appraised forthwith as prescribed by the statute and
the contract; that the said board failed and neglected
to make the said appraisal, as required by law, and that,
at various times since the execution of the contract, the
demand and request for the said appraisement as re-
quired by law has been renewed and repeated by this
plaintiff and by plaintiff and his assignor as hereinafter
set up, and that said demands and requests have not been
complied with, but that said board has failed and neg-
lected at all times to make said appraisement; though
at all such times promising so to do.   That at various
times since the first of January, 1903, this plaintiff has
demanded and requested of defendants herein, acting
and sitting as the board of state land commissioners, to
appraise said lands as required by law, but that on the
24th day of October, 1903, and not before, the defend-
ants peremptorily refused and still refuse to make the said
appraisement as requested and demanded by this plain-
tiff.   That the statute and contract of this plaintiff re-
quire that said land shall forthwith, upon the execution
of the contract, be appraised at their actual value "at
the time of the letting of such contract," and that this
plaintiff may not with certainty or safety proceed to
the excavation of the waterway provided in said contract
until said lands shall have been so appraised as required
by law."

The respondents demurred to the petition.   Upon the
hearing of this demurrer the following stipulation was
filed:

"It is hereby stipulated by the parties that since the
contract set forth in the petition herein was entered into,
all the lands covered by said contract have been sold, dis-
posed of and conveyed by the state to various persons
and corporations in the manner provided by law."

Section 10 of the waterways act provides:

"If the commissioner of public lands shall determine to
let any contract for the excavation of a waterway, as here-

inbefore provided, the tide land appraisers appointed in the county in which said tide lands lie, shall forthwith appraise the tide lands which it is proposed to fill in by the excavation of such waterway, at their actual value at the time of letting such contract, and the said lands so appraised shall never be disposed of by the state for less than such appraised value."

Petitioner argues that the statutory requirement is mandatory upon the appraisers to proceed to an immediate appraisement of the lands included in the contract, and that his lien cannot attach until such appraisement shall be made. Neither the act nor the contract makes the contractor's lien upon the lands dependent upon the appraisement thereof. Even if the statute should be held to be mandatory, we cannot agree that the failure to appraise the lands in any manner affects the contract, or any lien which petitioner may acquire, or other rights he may have thereunder. The object of section 10 clearly was to place a value upon the lands, below which they should not be sold, either to the contractor or to other persons. The act "does not contemplate a retention of the tide lands by the state until the contract for filling in is complied with. The state retained the right to sell its tide lands or lease its harbor areas. By the act in question there was reserved to the contractor a lien only on the lands filled in under such contract." *Hays v. Hill*, 23 Wash. 730, 63 Pac. 576. Section 4 of the act reserves a lien to the contractor who may fill in the lands, and, if such lands are not sold by the state within one year after improvements are made and certificates issued therefor, such certificate holders have an option, during the next succeeding six months, to purchase the lands improved, from the state "in the manner provided by the then existing laws for the sale of tide lands of the state." This option, of course, cannot inure to the bene-

fit of the petitioner, because the lands have already been sold by the state, and are now owned by other parties. When the lands are sold by the state, the remuneration of the contractor for lands filled in under his contract must necessarily come from a foreclosure of the liens as provided for in the act. The sale of the lands by the state simply removed the burden resting upon the contractor to buy the lands in order to protect his lien for filling above high tide. It follows that an appraisement of the lands would be of no avail to the relator.

The writ will therefore be denied.

FULLERTON, C. J., and HADLEY, DUNBAR and ANDERS, JJ., concur.