[Civ. No. 1241. Third Appellate District.—June 30, 1915.]

## ROSIE CORDANO et al., Respondents, v. B. KELSEY et al., Appellants.

Taxation—Sale by Tax-collector—Time of Mailing Notice.—In the case of a sale by the state of land acquired by it for delinquent taxes, notice of the sale should, under section 3897 of the Political Code, be mailed to the party to whom the property was last assessed as long before the sale as the notice by publication is required to be given—that is, at least three successive weeks before the sale; and where but twenty day's notice is given, the sale and the deed made pursuant thereto are void.

Id.—Tax Title—Mailing of Notice of Sale—Evidence—Insufficient Time.—In this action to quiet title to a city lot against the defendants claiming under a tax title thereto, it is held that the evidence fails to support the contention of the defendants that a notice of the sale of the lot for delinquent taxes was registered and mailed to the owners to whom the lot was last assessed twenty-five days prior to the date of sale.

Id.—Notice of Tax Sale—Separate Statement of Penalties and Costs.—In a notice of sale by the state of land for delinquent taxes it is necessary that the amount of the penalties and costs be separately stated.

Id.—Cancellation of Tax-deed—Reimbursement of Purchaser—Limitation.—Where an owner of land comes into equity asking relief to remove or cancel a tax-deed or sale as a cloud upon his title, or to obtain judgment which in effect will invalidate such sale or deed, the court should refuse any relief except upon the condition that he first repay to the tax purchaser or his grantee or assignee the taxes, penalties, interest, and costs justly chargeable upon the land, and which the purchaser has paid at the sale or afterward upon the faith of it, with legal interest from the time of such payment less rents received, if any, if the purchaser has been in possession; but such owner should not be required to pay whatever competitive bidders may choose to offer for the land in addition to what the law makes it his duty to pay.

Id.—Costs of Advertising—Reimbursement.—The purchaser is entitled to reimbursement for the costs of advertising the sale.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. W. S. Wells, Judge.

The facts are stated in the opinion of the court.

J. L. Smith, for Appellants.

Robinson & Robinson, and Harry A. Encell, for Respondents.

CHIPMAN, P. J.—Plaintiffs brought the action to quiet their title to a certain lot situated in the city of Oakland, claimed by defendants through their purchase of the property at tax sale for the nonpayment of taxes assessed for the fiscal year 1904–5. Plaintiffs had judgment in their favor from which defendants appealed.

The judgment was reversed for the reasons given in our opinion written by Mr. Justice Hart, reported in 19 Cal. App. Dec., p. 823 (No. 988). At the trial it was stipulated that plaintiffs were the owners in fee of the property, "excepting in so far as their title, or the title of either of them, is affected by a certain deed from the tax-collector, James B. Barber, to the defendants in this action, made on the twenty-eighth day of March, 1911, and by the proceedings leading up to the same" and that, excepting for the year 1904, plaintiffs had paid all taxes assessed against said property. The controversy hinged, therefore, upon the validity or invalidity of defendants' title acquired through said tax-collector's deed. The trial court found that the sale of the property to the state and also the sale by the state through the tax-collector's deed were invalid because of certain irregularities. It found that "the amount of all taxes, penalties, costs and interest chargeable upon the land describd in plaintiffs' complaint, and which was paid by defendants at the sale of the said land by" said tax-collector, "on March 28, 1911, together with interest at 7 per cent per annum on said taxes, penalties, costs and interest from the date of said sale to the date hereof is $9.95." The judgment awarded plaintiffs was contingent upon their paying to defendants the sum of $9.95. The objections interposed by plaintiffs to defendants' title and sustained by the trial court, as appears from its findings and as summarized in Judge Hart's opinion, were the following: 1. That the property involved here and upon which the assessment was attempted to be made was not correctly described by the assessor in the assessment-roll and was, therefore, improperly described in the notice of sale and the tax-deeds. 2. That the property was sold for a sum in excess of that for

which it was assessed.  3. "That no notice of· sale by the
state was given as required by law, said notice not containing
the detailed statement required by statute, and not having
been mailed to the party to whom it was last assessed next
before the sale, within the time required by law."  4. "That
the assessment-roll was not in the form prescribed by law,
there being no entry on the assessment-roll of the amount to
be paid as taxes upon the property."

We held that the notice of the sale by the tax-collector,
upon the authorization of the state controller, required by sec-
tion 3897 of the Political Code, was not given for the full
length of time made necessary by the statute as it has been
construed by the supreme court in *Healton* v. *Morrison,* 162
Cal. 668, [124 Pac. 240], "that the notice should be mailed
as long before the sale as the notice by publication is to
be given—that is, at least three successive weeks before the
sale."  The evidence seemed to us to show that the notice
was addressed to Rosie Cordano, at her last known address,
and was registered and mailed in the post-office at Oakland,
by the tax-collector, on the eighth ·day of March, 1911, and
stated, as did the published notice, that the sale would take
place on March 28, 1911.  It will thus be seen that but twenty
days' notice was given, whereas the law provided that the
owner was entitled to twenty-one full days' notice.  The facts
and the law being apparently clear, it was deemed unneces-
sary to pass upon other of the objections made to defendants'
alleged title.  But, while it was held that plaintiffs were
entitled to judgment quieting their title to the property in
dispute because of the invalidity of the sale to defendants,
it was said in the opinion that the defendants are entitled "to
reimbursement for the full amount which they were required
to pay the tax-collector for all the taxes justly assessed against
said property, and the accruing penalties, costs, interest and
the legal expenses incident to the proceedings culminating
in said sale, and this, we think, they have not been allowed
by the decree."  In accordance with the request of both par-
ties a rehearing was ordered.

Appellants claim that the court overlooked evidence which
was vital to their case,—namely, "that a prior notice to the
notice registered on March 8, 1911, was registered and mailed
to the owners of the property on March 3, 1911, or 25 days
prior to the date of the sale."  Appellants also claim that they

''are entitled to a new trial of the entire cause in the superior court for the further reason that the lower court failed to find upon that very point which this court holds to be the most important question involved in the case,''—namely, ''the superior court failed to find when the notice required to be registered under section 3897 of the Political Code, was actually registered.''

Respondents complain of the former decision on the grounds: 1. That the rule enunciated by this court ''relating to the reimbursement of purchasers at a tax-sale is not in consonance with the rule therefor as laid down by the supreme court of this state. 2. That the record contains complete evidence to support the finding of the court on the subject of reimbursement of purchasers at tax sales. 3. That the direction given to the court below in this court's decision is inconsistent with the rule enunciated by this court in its decision relative to reimbursement of purchasers at tax sales. 4. That this court did not consider the findings of the trial court which were in effect that the assessment itself was void, which fact would make reimbursement of any amount to the purchasers at the tax sale unnecessary.''

1. We will address ourselves first to appellants' objection that there was evidence of a notice having been sent to the owner on March 3, 1911. There was introduced in evidence by plaintiffs ''the original envelope that was mailed by the tax-collector, as required under section 3897, containing the statement in words and figures the same as the last stipulation we have entered into. Mr. Robinson: Read the face of the envelope. Mr. Encell (reading): 'If not delivered in 20 days, return to James B. Barber, county tax-collector, Alameda County, Oakland, Cal. Return receipt requested. Rosie Cordano. Oakland, Cal. Registered, No. 6554,' with the number scratched out. 'Registered, No. 8410,' then '8410' scratched out. '46032. Returned to writer unclaimed. Second notice March 3/11. Directory searcher No. 2.' Mr. Smith: Here is something you didn't put in, '3/28,' with a circle around it. Mr. Encell: '3/28.' Two United States 5-cent stamps, and a United States 2-cent stamp, all canceled. On the back of the envelope: 'Oakland, Cal., March 28/11. Registered, Oakland, Cal., March 8/11. Registered. Oakland, station D (Cal.), March 8/11. Registered, Oakland, Cal., March 28/11. Registered Oakland (station D), Cal., March 29/11. Regis-

tered. Oakland (station D), Cal., Mar. 8/11.' Q. Mr. Far-
rell, that envelope is a part of the records of the tax-collector's
office? A. Yes, sir."

There was no direct evidence of the actual mailing of this
envelope, but Mr. Farrell, chief clerk of the tax-collector, tes-
tified: "Q. So far as you know, that is the only envelope ever
registered or sent to Rosie Cordano, Oakland, Cal.? A. As
far as I know, yes, sir. Q. Or any other address? A. As
far as I know." He further testified: "I didn't see it; that
is, I didn't mail it myself. I recognize the handwriting and
things of that kind, as the man who had the work in charge.
The Court. Q. This letter was returned to the office? A.
Yes, sir. Q. With the inclosures? A. With the inclosures."
This is the evidence concerning the notice on which defend-
ants rely. They claim that: "The envelope states very
plainly upon its face: 'Second notice March 3, 1911.' There
is no denial that such notice was given. It must be taken
as admitted by undisputed evidence that this notice was
given." It is also claimed that "the record shows two reg-
istered numbers, 6454 (6554 in the record) and 8410, and two
dates upon which these notices were given. There could not
be two numbers, if the notice was not registered twice."
Further, it is claimed that the point as to notice was raised
for the first time by respondents on appeal. In this latter
claim appellants are in error for we find at the folios of the
transcript indicated by appellants the following among other
objections made by plaintiffs at the trial: "3. That no notice
of sale was sent by registered mail, or otherwise, to the owner
of the property, or the present owner to whom it was as-
sessed, at her last known post-office address." Both regis-
tered numbers were "scratched out." It very clearly ap-
pears by the indorsements "on the back of the envelope"
that it was "Registered, Oakland, Cal., March 8/11. Reg-
istered, Oakland, station D (Cal.), March 8/11." The mean-
ing of the indorsement—"Second notice, March 3/11," is not
explained. And unexplained it means nothing. It is not
stated that the envelope was registered as the law requires
on that day or that any envelope of that date was registered.
The only registered numbers appearing are scratched out. It
does appear, however, that the envelope, and there was but
one, was registered on March 8, 1911. The tax-collector's
deed under which appellants are claiming title contains the

following: "And whereas, on the 8th day of March, 1911, James B. Barber, tax-collector as aforesaid, did mail a copy of said notice, postage prepaid and registered to the party to whom the land was last assessed next before such sale at his last known post-office address." We think the court would not have been authorized from what appears in the record to find otherwise than that the only registered notice sent was that contained in the only envelope introduced and bearing indorsements showing that it was registered March 8, 1911. If the indorsement, "Second notice March 3/11," had any meaning, defendants should have so shown. The only question is, Was this a material issue on which the court should have made a specific finding? That the issue was material cannot be doubted. (*Healton* v. *Morrison,* 162 Cal. 668, [124 Pac. 240].) The uncontradicted evidence was that the notice was registered and mailed one day too late to be effective. Where an issue is controverted and the evidence upon it is conflicting there should be a finding. (*Haight* v. *Tryon,* 112 Cal. 4, [44 Pac. 318], cited by appellants.) But where the evidence as to the issue is uncontroverted no finding is necessary. Defendants did not in their answer set up the source of their title; they simply claimed to be owners in fee. The evidence as to the source of their title consisted in chief of the tax-collector's deed given under proceedings for the sale by the state after failure of plaintiffs to redeem from a delinquent tax-sale to the state. It appeared, as we have seen, that the only registered notice of the sale by the state was mailed on March 8, 1911.

2. The parcel of land mentioned in plaintiffs' complaint is described therein as situated in the city of Oakland, Alameda County, California, being "Lot numbered 21 in block numbered 2118 as said lot and block are delineated and so designated on that certain map entitled 'Map of the Alden Tract at Temescal, subdivided according to the general plan of streets, etc.,' filed December 10th, 1869, in the office of the county recorder of the county of Alameda, state of California."

The land described in the tax-collector's deed dated March 28, 1911, under which defendants claim title, is described as follows: "The lot of land in Oakland City, in Alden Tract, map filed of record in the office of the recorder of Alameda Co., Lot 21, block 2118 and imps."

In the assessment-roll the land is described as in "Oakland City . . . in Alden Tract, map filed of record in the office of the recorder of Alameda County; lot mortgaged to Mary M. Fennon; city and town lot, lot 21, block 2118." In the delinquent list for the year 1904 the property is described: "44894. J. McElrath. In Alden Tract. Map filed of record in the office of the recorder of Alameda Co. Lot 21, block 2118 and imps. $600." In the certificate of sale to the state, of date July 3, 1905, the land is described thus: "In Oakland City. In Alden Tract. Map filed of record in the office of the recorder of Alameda Co. Lot 21, blk. 2118 and imps." In the deed to the state, of date July 5, 1910, the description of the land is the same as in the certificate of sale, last above.

Witness Kelsey, for defendants, testified that he had examined the records of maps of Alameda County, two maps entitled "Alden Tract," but "found lot 21 in block 2118 on only one of said maps." It was stipulated "that there were only two maps on file in the recorder's office of Alameda County that have the words 'Alden Tract' within their title or designation and that said maps are admitted in evidence without objection on the part of the plaintiffs and that said maps and the titles of the said maps are as follows: 'Map of the Alden Tract at Temescal, subdivided according to the general plan of streets. W. F. Boardman, County Surveyor, filed in the recorder's office of Alameda County, December 10, 1869, at 5 o'clock P. M., at the request of J. E. Whitcher.' 'Map of the Alden Tract, surveyed by T. J. Arnold, City Engineer, October 7, 1872, T. W. Morgan, deputy, filed at the request of S. E. Alden, October 15, 1879, at 15 minutes past 12 P. M.' " These maps show that the lot in question is found on the map first above referred to, i. e., the "Alden Tract at Temescal," but it does not appear on the other map, although there does appear a lot designated 21 but not in any designated block. The court found that the description of the land published in the assessment list of taxes for the year 1904; the description contained in the delinquent list; the description of the land given in the deed to the state in 1910; the description in the notice of sale by the state; also in the deed of March 28, 1911, is not a description of the land described in plaintiffs' complaint.

The question at issue here is, Was the description sufficient when considered as part of tax proceedings? Section 3650 of the Political Code provides as follows: Property must be listed "by township, range, section, or fractional section; and when such land is not a congressional division or subdivision, by metes and bounds or other description sufficient to identify it." Section 3764 of the same code provides that "the tax-collector must publish the delinquent list, which must contain the names of the persons and a description of the property delinquent, and the amount of taxes, penalties, and costs due." Where the property is sold to or by the state the deed must recite "a description of the land sold" (Pol. Code, sec. 3785), and a like description is required in the notice of any sale by the state. (Pol. Code, sec. 3776.)

Doubtless, in all the cases above referred to no more would be required than a description of the property "sufficient to identify it," when not a congressional division or subdivision. Here were two maps, made and filed at wide intervals of time and embracing different tracts of land in the same city. One is designated as "Map of the Alden Tract," embracing land none of which was owned by plaintiffs' grantor and which did not embrace any lot as lot 21, block 2118. The other map was designated "Map of the Alden Tract at Temescal" and embraced lot 21, block 2118. The maps show a common eastern boundary—Telegraph Avenue—but otherwise have no connection with each other and embrace land widely separated. If the description "is sufficient to give the owner notice that the deed is burdened with the tax" it was held properly imposed in *Best* v. *Wohlford,* 144 Cal. 733, 736, [78 Pac. 793]. The court said, in *Baird* v. *Monroe,* 150 Cal. 560, 572, [89 Pac. 352]. "The description must be 'sufficient to identify' the property implies that evidence may be received, not for the purpose of helping out a defective description, or to show the intention with which it was made, or to resolve an ambiguity in its terms—none of these things can be done—but to show the sufficiency of the description and to apply the description to the surface of the earth."

Where reference is made in the deed to a map the latter becomes a part of the deed, but must, when taken together, "be as certain in respect to the description as a description contained in the deed itself, and the identity of the map referred to must be clearly established." (*Cadwalader* v. *Nash,* 73

Cal. 43, [14 Pac. 385].) When reference is made to a map "the map must be correctly named." (37 Cyc. 1056.) It seems to us that, applying the foregoing rules, it cannot be said that proof of the existence of lot 21, block 2118 in "Alden Tract at Temescal" helps out a description of lot 21, block 2118 in "Alden Tract," for there is a wide difference between the designation of a "Map of the Alden Tract" and "Map of Alden Tract at Temescal"—a distinction as marked, it seems to us, as if instead the maps designated were "Map of Alden Tract A" and "Map of Alden Tract B." And we do not think an assessment of a particularly described lot in "Alden Tract A" would be notice to the owner of a similarly described lot as in "Alden Tract B"; nor could the assessment be aided by proof that the particular lot was not found in Tract A, but was found in Tract B. Neither would such proof meet the rule stated in *Baird* v. *Monroe*, 150 Cal. 560, [89 Pac. 352]), because the description of lot 21, block 2118, in the "Alden Tract at Temescal" cannot be applied "to the surface of the earth" in "Alden Tract," for no such lot is found in that tract.

The necessity for a sufficient description of the property is imperative in making up the assessment-list; in giving notice of any delinquency for taxes thereon; in a sale to the state in default of payment; in any subsequent notice of sale by the state, and in the deed by the tax-collector on behalf of the state, after the lapse of five years and no redemption has been made. The object of the statute is to notify the owner that the taxes thereon are delinquent, when the delinquent stage is reached, and the description of the lot must be sufficient to give such notice. (*Davis* v. *Pacific Imp. Co.*, 137 Cal. 245, 250, [70 Pac. 15].) Plaintiffs owned a lot in the tract designated "Alden Tract at Temescal." The notice of delinquency was: "J. McElrath. In Alden Tract, map of record in the office of the recorder of Alameda Co., lot 21, block 2118 and imps." We cannot regard this as sufficient notice to the owners. That lot, it is true, was described but the notice was that it was in an entirely different tract. Seeing this notice the owners might well have assumed that it referred to a lot in "Alden Tract," the map of which was filed at a different time from the map of "Alden Tract at Temescal" and bore a different title and, so far as they knew, might embrace a lot 21, block 2118. We are not now dealing

28 Cal, App.—2

with the duty of the plaintiffs to see to it that their taxes were paid, but whether the defendants, who are seeking to deprive plaintiffs of their property, have succeeded under proceedings which are *in invitum* and to be valid must be *stricti juris*.

Defendants rely upon the case of *Campbell* v. *Shafer,* 162 Cal. 206, [121 Pac. 737], as parallel to the present case. The tax proceedings in that case described the land as in "Los Angeles City, Main Street Tract, lot 3, block A.". It appeared, from evidence introduced, that there was only one map entitled Main Street Tract filed in the office of the recorder. Two maps were introduced showing different properties. The court said: "It is true that defendant offered in evidence another map entitled 'Main Street Tract' shown to be recorded in book 21, page 7, Miscellaneous Records of the Recorder's office, Los Angeles County, but since it was shown by the uncontradicted evidence of the county recorder that the map so designated and recorded in book 20, page 41, Miscellaneous Records, was the only map or subdivision of lands situated in Los Angeles County, it must necessarily follow that the map so offered by defendant and recorded in book 21, page 7, was a plat and subdivision of lands outside of the city, to which the assessment, since it described the lot as situated within the city, would have no reference." The evidence in that case was that there was only one "Main Street Tract" in the city at the time of the assessment and only one map so entitled which designated lands in the city of Los Angeles. It seems to us that plaintiffs, in their brief, satisfactorily differentiate the Los Angeles case from the case here. We quote: "In the case at bar there is no such testimony. The testimony of B. Kelsey is that he found two maps entitled 'Alden Tract,' but the maps themselves were introduced in evidence and show that he really found only one map entitled 'Alden Tract,' another entitled 'Alden Tract at Temescal.' Assuming, for the sake of argument only, that the contention of counsel is correct, that is, that the real designation of the 'Alden Tract' and 'Alden Tract at Temescal,' is in each case merely 'Alden Tract,' we are confronted with a state of facts where in one city we have two maps of the same designation. In *Campbell* v. *Shafer,* 162 Cal. 206, [121 Pac. 737], the only basis of the decision in regard to the description was that there was only one map

in one city. Inferentially, if two maps of the same designation were shown to exist and designate property in the same city, as is the fact in this case, the case of *Campbell* v. *Shafer* would have been brought within the rule that parol evidence will not be received for the purpose of helping out a defective description, or to resolve an ambiguity in its terms."

If we are correct in our conclusion on this point, the invalidity of defendants' title is exhibited in every step of the proceedings, for we find the description of the land, from its assessment in 1904 to the sale in 1911, substantially the same.

3. In the notice of sale under section 3897 of the Political Code, the penalties and costs were commingled in one item amounting to $1.12. The code requires, among other things, that the notice "shall also contain a detailed statement of all the delinquent taxes, penalties, costs, interest, and expenses up to the date of such sale." Respondents contend that it was necessary to state each of these items separately and that the penalties and costs could no more be embraced in one item than could all of the items have been so stated. Furthermore, it is contended that the amount stated as penalties and costs exceeded by one cent the sum of costs and penalties due. It appears from the certificate of sale to the state that the penalties and costs amounted to $1,11, which is one cent less than as stated in the notice of sale by the state. The penalties, where computed amounted to sixty-one cents and the statute fixed the costs at fifty cents. It is true the owners could readily have ascertained the amount of these items though stated in one amount. So might it be said they could have figured out all the items separately had they been grouped as one. But the law required a "detailed statement of all the delinquent taxes, penalties, interest and expenses." It was as necessary to state the penalties and costs separately as it was to state all the delinquent taxes or of interest or of advertising the notice. It was said, in *Campbell* v. *Canty,* 12 Cal. App. Dec. 373: Whatever the provision is it must be complied with strictly; this is one of the most important of all safeguards that have been deemed necessary to protect the interests of persons taxed and nothing can be substituted for it or secure the failure to give it. It was also said in that case, quoting from Black on Tax Titles, sections 205–207, "it is held in all of the states that the giving of notice *in the manner and form* prescribed by the statute is an essential

jurisdictional fact." Not only is the giving of notice of the sale essential, but it must be such notice as the statute prescribes.

4. We come now to the question, Was the statement of the amount for which the property was sold materially different from the amount authorized by law? We think it unnnecessary to follow this question to its solution further than to determine the amount, if any, which plaintiffs should pay to defendants by way of reimbursement as a condition to having their title quieted. The court found this amount to be $9.95, that having been found by the court to be the amount of all taxes, penalties, costs, and interest chargeable upon the land and which was paid by defendants at the sale by the tax-collector on March 28, 1911, together with interest at seven per cent per annum on the foregoing items from the date of sale to the date of the judgment.

In the notice of sale under which the tax-collector made his deed of March 28, 1911, the following appeared: " . . . taxes for 1904, $4.88. Penalties and costs on delinquent roll, $1.12. Interest at 7% per annum from July 1, 1905, $2.40." Then there is a line, "$8.40. Total tax, $4.88. Total penalties and costs on delinquent roll, $1.12. Total interest, $2.40. Advertising this notice, $17.80. Least amount this property may be purchased for, $26.20." It was stipulated "that the foregoing is a true computation of the costs and penalties contained in said notice of sale regularly published by James B. Barber, under an authorization from the state controller to conduct a sale of the property described therein, on the 28th day of March, 1911." The deed of this latter date recites that at the sale to the state, in 1905, the property was sold for the sum of six dollars, "the amount of said delinquent taxes and costs"; that on the day of sale in 1911, "B. Kelsey and John J. Decarli, the parties of the second part herein, did then and there bid for said property the sum of $208; said sum being not less than the amount of all taxes levied upon said property, and all costs and penalties, for every year delinquent as shown by the delinquent rolls for said years to the date of the execution of the deed to the state, and all expenses accrued to the date of the sale so authorized, together with interest at 7% per annum from the first day of July following each delinquency in each of said years." It will be observed that this is not a statement of what the taxes,

penalties, etc., amounted to, but that the amount paid, two hundred and eight dollars, was not less than the amount of all taxes, penalties, etc.

The court found that the amount of taxes, penalties, and costs was $5.99, whereas the amount stated in the delinquent list and for which the property was sold was six dollars, and that this amount ''was in excess in the sum of one cent of the aggregate of the taxes levied on said property and the penalties and costs which have accrued thereon by reason of the default in the payment of said tax against said property.'' Both parties devoted many pages to the controversy over this one cent excess. Appellants submit that had the fractions been considered in the computation by the auditor the true amount would be six dollars. If, however, the proceedings were invalid for the reasons given upon the other points considered, it is unnecssary to determine whether the true amount was $5.99, as claimed by respondents, or six dollars, as claimed by appellants.

In *Holland* v. *Hotchkiss*, 162 Cal. 366, 375, [L. R. A. 1915C, 492, 123 Pac. 258], the court said: ''Where the owner comes into equity asking equitable relief to remove or cancel a tax-deed or sale as a cloud upon his title, or to obtain judgment which in effect will invalidate such sale or deed, the court should refuse any relief except upon the condition that he first repay to the tax purchaser or his grantee or assignee the taxes, penalties, interest and costs justly chargeable upon the land, and which the purchaser has paid at the sale or afterward upon the faith of it with legal interest from the time of such payment less rents received, if any, if the purchaser has been in possession.'' The record furnishes sufficient evidence to form a basis for enforcing the rule laid down in *Holland* v. *Hotchkiss*.

| | | |
|---|---|---|
| Taxes, first installment | | $2.44 |
| "    second    " | | $2.44 |
| Penalties, ⎫ | 15% first installment, | .366 |
| Pol. Code, ⎬ | 5%    "    " | .122 |
| sec. 3756, ⎭ | 5%    "    " | .122 |
| Costs, sec. 3770, Pol. Code, | | .50 |
| | | $5.99 |

Section 3897 of the Political Code, allows interest at seven per cent from July first following delinquency in each year

to date of sale. This, as the record shows, amounted to $2.40, making in all, $8.39.

The court computed interest at seven per cent from date of sale to date of judgment which, as it was computed, added to $8.39, made $9.95, the amount the court directed plaintiffs to pay to defendants. The court made the interest too much by about one dollar, as we figure it. But appellants cannot complain of this unless they were, as they claim, entitled to the full amount paid by them at the sale—two hundred and eight dollars—or to the costs of advertising the sale, which the court did not allow.

Respondents contend that as the assessment was invalid they are not required to pay even the $9.95. They do not appeal and hence will not be heard to attack the findings or judgment.

The rule of reimbursment in an action to quiet title against an invalid tax sale is of equitable cognizance and not of statutory origin. It springs from the maxim—He who would seek equity must do equity.

We think the rule, as stated in *Holland* v. *Hotchkiss,* quoted, applies where the property is subject to taxation for the particular tax involved. If the tax is legal but, through some irregularity in one or more stages of the proceedings imposing it, it is found invalid, we think the rule applies. In such case the invalidity does not lie in the right of the state to levy the tax but in the means used in enforcing it.

Respondents cite 2 Cooley on Taxation, pp. 455, 1458, where it is said: ''If the tax were wholly illegal in its essentials, of course no such requirement (to reimburse the purchaser) could be made, for it would not be supported by any equity. As in removing cloud from title, he who seeks relief against a tax-deed must pay or offer to pay whatever taxes, interest, costs, etc., are justly chargeable against the land, and payment will be required by the decree; otherwise, where the taxes were absolutely void.'' These enumerated charges all justly accrue against the owner who neglects his duty to the state and they arise out of an obligation he owes to the state. When through such neglect a purchaser in good faith assumes the burden and, through the fault of the officers of the state, the proceedings to enforce this duty are defective, it would be inequitable to saddle the loss upon the purchaser when to place

it where it justly belongs is but to require the owner to do what was his duty from the beginning.

We think, however, the rule limits the requirement on the part of the owner, as stated in *Holland* v. *Hotchkiss,* i. e., that he will be refused "any relief except upon the condition that he first repay to the tax purchaser, or his grantee or assignee, the taxes, penalties, interest and costs justly chargeable upon the land and which the purchaser has paid at the sale, or afterward upon the faith of it, with legal interest from the time of such payment less rents received, if any, if the purchaser has been in possession." We do not think that the owner should be required to pay whatever competitive bidders may choose to offer for the land in addition to what the law makes it the duty of the owner to pay. The primary object of the state in selling the land is to recover the taxes, penalties, costs, etc., and this is indicated by the requirement of the law that the land must be sold for an amount not less than these enumerated charges. Whoever pays more at the sale does so as a volunteer and at the risk of the proceedings being found invalid. The rule contended for by appellants would relieve the purchaser of all risk and make it possible for him to invest his money safely by purchases at tax sales at seven per cent interest regardless of any infirmity in his title and regardless of the amount he might bid for the property. This, we think, would crowd the rule off from its equitable foundations.

In *Holland* v. *Hotchkiss,* the court took occasion to review the conflicting decisions and to formulate a definite rule. We do not feel disposed to extend it.

One other question is involved: Does the principle of that case require reimbursement to include the cost of advertising? . In the present case the court made no allowance for the item which the notice of sale stated was $17.80. In *Campbell* v. *Canty,* 12 Cal. App. Dec. 373, the court said: "The state wants its taxes but not the property, and no owner of real estate who has allowed the taxes thereon to become delinquent and so sold to the state may be forced to sacrifice valuable property for the mere taxes in the payment of which he has defaulted. The legislature has provided that the right to redeem delinquent real estate subsists in the owner and his successor in interest, at any time after the same has been sold to the state and before

the state shall have disposed of the same. (Pol. Code, sec. 3817.) Thus it will be observed that up to the very moment that the real estate is sold by the tax-collector for the state, the owner or any one in interest has a right to redeem it,'' and it is pointed out that before a sale can be made the tax-collector must publish notice of the sale and give the owner notice thereof. It thus appears first, that the owner's right of redemption continues until an actual sale takes place, and second, before this right is cut off the state must incur the expense of advertising the property for sale. If the owner should offer to redeem on the day of sale we think he should be required to pay this advertising charge. It seems to us that to require the owner to reimburse the purchaser in this expense would rest upon as strong equitable considerations as to require him to pay the antecedent expenses attending the proceedings to enforce payment of the taxes. The situation harks back to the failure of the owner to perform a duty imposed by law and every succeeding step to the day of sale is made necessary by his default.

It appears without conflict that the cost of advertising the sale was $17.80. We have seen that the amount of the taxes, penalties, etc., found to have been $9.95, is even more than defendants can claim on that score. They paid two hundred and eight dollars at the sale, which, of course, was ''not less than all the taxes, penalties, interest, costs and expenses'' justly chargeable upon the land.

Upon the whole case our conclusion is that the tax-sale was invalid for one or more of the objections we have considered. The judgment quieting plaintiffs' title to the land described in the complaint is affirmed. The judgment is modified in this, that plaintiffs' title is quieted upon condition that they deposit with the clerk of the trial court, subject to the joint order of defendants, the sum of $17.80 in addition to the sum of $9.95 already so deposited by plaintiffs and so found by the court. It is further ordered that the costs of the appeal be divided equally between plaintiffs and defendants.

Hart, J. and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court, on August 27, 1915, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing in this court after decision by the district court of appeal for the third district is denied.

In denying the petition we desire to say that we are not to be understood as expressing an opinion as to the correctness of what is said in the opinion of the district court of appeal on the subject of the sufficiency of the description contained in the assessment, but we are satisfied with the correctness of the views expressed relative to the giving of notice by mail of the sale by the state, with the result that the sale by the state must be held void.

As to the claim that interest should have been allowed on the $17.80 awarded by the district court of appeal for publication of the notice of sale, we are of the opinion that the amount involved is so small as not to justify an order transferring the cause to this court.