[Civ. No. 6735. First Appellate District, Division One.—April 27, 1929.]

LUMAN DAVIS, Appellant, v. V. L. DAY et al., Respondents.

R. M. F. Soto for Appellant.

L. A. Kottinger, Julian H. Biddle and Marcus D. Wolff for Respondents.

PARKER, J., *pro tem.*—This is an appeal by plaintiff from an adverse final judgment, in a suit to quiet title after a motion for a new trial had been denied. It will be unnecessary to describe the property involved other than to state that the said property comprises certain city lots in the city of Oakland. For the purposes hereof the lots may be described as lots 6, 10, 11 in block 2 as said lots appear upon that certain map entitled "Map of the R. F. Knox Tract, Brooklyn, Alameda County, California, etc.," filed October 9, 1880, in the office of the county recorder of Alameda County. The separate claim of the defendants as affecting the property need not be recited inasmuch as plaintiff makes the same claim to each lot and if plaintiff prevails as to one it will determine his right to all. The sole point involved in this appeal is as to the validity of certain tax proceedings and the effect of a deed following. Willis M. Arnett on and before the first Monday in March was the owner of all the property involved. The assessment-book of the property of Alameda County for the year 1919 shows the assessment of the property involved as follows: The taxes due under this assessment, or claimed to be due, were not paid and upon such failure of payment of taxes the property was listed as delinquent upon the delinquent rolls of Alameda County. Such listing upon the delinquent roll is in the manner as follows, to wit:

ASSESSMENT BOOK OF THE PROPERTY OF
ASSESSED TO ALL OWNERS WHEN KNOWN

ALAMEDA COUNTY FOR THE YEAR 1919
AND WHEN UNKNOWN, TO UNKNOWN OWNERS
Approved by State Board of Equalization September 29, 1915

DELINQUENT ROLL OF THE PROPERTY OF
ASSESSED TO ALL OWNERS WHEN KNOWN

ALAMEDA COUNTY FOR THE YEAR 1919
AND WHEN UNKNOWN, TO UNKNOWN OWNERS

Willis M. Arnett
2621

It is the contention of the appellant that the property here in question, namely, lots 6, 10, 11 in block 2, were never legally assessed, and that as an assessment "is an essential prerequisite to the validity of all subsequent proceedings" the lack thereof would render ineffective any attempted sale following an alleged failure to pay taxes claimed. The basis of the contention is that the assessment itself shows that the name of the owner of lots 6, 10, 11 does not appear upon the roll. In other words, it is appellant's contention, in this respect, that from the appended exemplar it is self-evident that the only parcel of land that shows the name of the owner is lot 4, and the contention is supported by the claim of appellant that as the name of the owner "Willis M. Arnett appears but once, and then opposite and to the left of lot 4 that the ownership by the specified name is to be restricted to the lot. Before pursuing the arguments further we might state that the remaining pages of the assessment roll show that in each assessment the method followed was to insert the name of the owner but once and to include under the one name, all property assessed or attempted to be assessed as the property of the owner. Appellant cites us many authorities but none which we deem in themselves controlling herein. It may be conceded that tax proceedings, from the very inception thereof down to enforcement of payment, are deemed *in invitum* and the authorities cited by appellant go no further than to support the rule of law. Conceding the strictness of the rule and mindful of the caution necessary lest the principle be destroyed, nevertheless its preservation and the protection of the rights of taxpayers do not demand the construction contended for here. The assessment book must show the name of the owner of property assessed. In this case and by the method here employed it can easily be seen that all of the property assessed in the block to the right of the name Willis M. Arnett belongs to that individual. It is a matter of common knowledge and ordinary practice that wherever listings are made with reference to an individual the name appears but once and is not a matter of unnecessary repetition. It may be true that in some of the older cases the theory of taxation proceedings being *in invitum* was made specially strict, but when we analyze the facts of each case it

must be conceded that no ruling goes as far as the one here sought. In *People* v. *Sierra B. Q. M. Co.*, 39 Cal. 513, an early case, it is said: We think the objection that the name of the corporation defendant is not found in the column, under the head of 'Tax Payers Names' because some portion of the name extends beyond the line of that column, is hypercritical. The name is found in the proper place, is easily read and the circumstances create no confusion or trouble. If such objections were fatal, very few assessments would be held valid." (See, also, *Baird* v. *Monroe*, 150 Cal. 568 [89 Pac. 352]; *Knobloch* v. *Associated Oil Co.*, 170 Cal. 144 [148 Pac. 938]; *Marysville Woolen Mills* v. *Smith*, 178 Cal. 790 [175 Pac. 13].)

It seems to us, with reference to the point, that the name of the owner does not appear on the roll with reference to the lots in question here, that the contention is frivolous and without the slightest merit. The method here adopted seems so obviously proper and systematic that we cannot but feel that the same method is in general use and for us to hold invalid an assessment so made, on that ground alone, would tend to upset every assessment-roll in the state.

Concluding that the assessment itself was regular and valid we pass to the next ground of appeal, stated as follows: No delinquent taxes ever accrued against any of the lots in controversy because there was no tax ever extended against, or apportioned to, any one of the lots separately. The claim goes to the extension of the amounts due. In other words, it is appellant's contention that in the extension the sum chargeable against each lot should be carried over into the tax columns rather than a gross figure showing the entire amount to be paid by the taxpayer. In support of the argument the following cases are cited: *Terrill* v. *Groves*, 18 Cal. 149; *People* v. *Clunie*, 70 Cal. 504 [11 Pac. 775]; *Cadwalder* v. *Nash*, 73 Cal. 43 [14 Pac. 385]; *Stege* v. *Richmond*, 194 Cal. 305 [228 Pac. 461].

In each of these cases noted it will be seen that the defect was in the joint assessment or joint valuation of the lots in question. The extent of these decisions would be that if, in the instant case, the lots had been assessed as a group and one total valuation placed on the whole, the assessment would have been invalid. That is not the case

here. Each lot is separately assessed and a separate valuation placed thereon, and the amount of tax against each is merely a matter of computation. The question is flatly decided in *Gottstein* v. *Holmes,* 89 Cal. App. 145 [264 Pac. 310], wherein it it said: ''The sale to the state was for the delinquent taxes of 1917. The assessment roll for that year was introduced in evidence by appellant. This showed that the lots were assessed separately to the same owner, but the auditor extended the tax on the sum of their assessed valuations, the total tax being $1.59. This total he divided into two parts, one for 80 cents, the other for 79 cents, and entered them in the several columns as first and second instalments of the tax. It is the contention of appellant that this invalidated the assessment, and therefore made void the deed to the State. This contention cannot be sustained. In the first place, the extension of the tax by the auditor is no part of the assessment of the property, and assuming that it was improperly done it is one of the proceedings of the regularity of which section 3787 of the Political Code provides that the deed to the state shall be conclusive evidence.'' The contention of appellant is that, irrespective of what the assessment and its extensions might show, it was lacking in effect because there was no mathematical diagram of the process by which the total was reached. Without showing or claiming injury or chance of being misled, he argues that with the tax rate a thing fixed, established and known, the validity of the assessment depends upon the roll showing just how much tax was collectible against each piece, separately valued and separately listed. This information is readily obtainable from the roll itself and becomes, as indicated, a mere matter of calculation. In the instant case there is not the slightest semblance of claim that the properties or any portion thereof were sold for even a penny more or less than the amount actually due thereon by reason of the delinquency following the regular assessment. While we again concede that there are certain established requirements necessary to a valid assessment of property it must be true that each of the requirements is founded upon some adequate and reasonable principle of law. The courts do not start with the presumption that the entire system of taxation is unlawful or harmful. On the other hand,

it is universally recognized that taxation is essential to our welfare and maintenance and requirements as to manner and form are always founded on some reason. (See *Davis* v. *Pacific Imp. Co.,* 137 Cal. 250, 251 [70 Pac. 15].) Finally appellant attacks the constitutionality of the sections of the Political Code under which the sales of the property were held. The contentions of appellant in this regard have been fully considered in the case of *Jacoby* v. *Wolff,* 198 Cal. 667 [247 Pac. 195], and the detriment adverse to his claim here. Such other grounds for reversal urged by appellant, which are not repetition of those already considered, we deem without merit. Particularly is this so because no authority is cited but an attack on the entire law is made from shifting premises and too general conclusions.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 27, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1929.